# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 10-3605

Robert L. Trafter, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued January 30, 2013                    Decided April 29, 2013)

*Daniel G. Curry*, of Kansas City, Missouri, for the appellant.

*Jesse B. Greenstein*, Appellate Attorney, with whom *Will A. Gunn*, General Counsel, *R. Randall Campbell*, Assistant General Counsel, and *Nisha C. Hall*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before HAGEL, MOORMAN, and SCHOELEN, *Judges*.

MOORMAN, *Judge*, filed the opinion of the Court. HAGEL, *Judge*, filed a separate opinion concurring in the result.

MOORMAN, *Judge*: Veteran Robert L. Trafter appeals, through counsel, an October 5, 2010, Board of Veterans' Appeals (Board) decision that denied entitlement to compensation under 38 U.S.C. § 1151 for a mental disorder allegedly due to treatment occurring at a VA facility. *See* Record (R.) at 3-17.

This panel was convened to decide, in the context of a 38 U.S.C. § 1151 compensation claim, whether the correct legal standard for determining if VA must provide a medical examination or opinion is provided under 38 U.S.C. § 5103A(a) or 38 U.S.C. § 5103A(d). The Court holds that VA's application of section 5103A(d) to section 1151 disability compensation claims is in keeping

with the statutory language, prior caselaw from this Court and the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), and legislative history. However, because the Board misinterpreted a section 5013A(d)(2) factor, to the detriment of the appellant, remand is required.

## I. BACKGROUND

The appellant presented two theories of entitlement to compensation under section 1151 to the Board: (1) VA failed to timely diagnose and treat his breast cancer, which led to the development or aggravation of his mental disability; (2) VA misdiagnosed him as having bipolar disorder, which, in turn, caused or aggravated his mental disability. R. at 8; *see* M21-1 MR, pt. IV, Subpart ii, ch. 2, sec. G(34)(b) ("Entitlement to compensation under 38 U.S.C. [§] 1151 may be based on acts of omission as well as acts of commission."). In its October 5, 2010, decision, the Board recognized "that assistance shall include providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim." R. at 6 (citing 38 U.S.C. § 5103A(d) and *McLendon v. Nicholson*, 20 Vet.App. 79 (2006)). However, the Board found that because the record contained no "competent medical evidence that additional disability resulted as a consequence of negligence, careless[ness], or other fault on the part of VA, or an event not reasonably foreseeable," and the appellant's lay testimony did not "satisfy the criteria for obtaining a VA opinion or examination," VA was not required to provide a medical examination or opinion in this case. *Id*.

On appeal, the appellant asserts that VA should have provided him with a medical opinion under section 5103A(d), because "both the competent medical evidence and [his] lay testimony–was sufficient to 'indicate' that an additional disability (depression) resulted from VA medical treatment." Appellant's (App.) Brief (Br.) at 6. In the alternative, and in response to the Court's request for additional briefing, the appellant argues that section 5103A(a) should have been applied to his claim because a section 1151 claim does not seek "disability compensation," as required for the application of section 5103A(d). He asserts that, according to section 5103A(a), VA must provide him with a medical opinion because it is necessary to decide his claim and has a reasonable possibility of substantiating his claim. The appellant also contends that the Board improperly substituted its own

medical judgment in lieu of obtaining a medical opinion, provided an inadequate statement of reasons or bases for its determination, and failed to obtain relevant private medical records.

The Secretary argues that the application of section 5103A(d) to a claim for disability compensation under section 1151 is reasonable in the absence of clear Congressional intent as to which part of section 5103A should apply. He also argues that VA is not required to provide a medical opinion because "the record is absent sufficient evidence to establish fault on the part of VA, or suggest an association between any VA medical care [the] [a]ppellant received and his alleged current mental condition," and that VA has no duty to obtain irrelevant private cancer treatment records that the appellant failed to identify. Secretary's (Sec.) Br. at 15, 22.

Because determining which part of section 5103A applies to a section 1151 compensation claim is critical in resolving the key issues raised in this appeal, the Court begins by reviewing the statutes involved de novo. *See* 38 U.S.C. § 7261; *Bradley v. Peake*, 22 Vet.App. 280, 290 (2008).

## II. STATUTORY ANALYSIS

When this Court reviews statutes that VA administers, we are initially confronted with whether Congress has directly spoken to the precise question at issue. *See Chevron v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). The matter of statutory construction is at an end if the intent of Congress is unambiguously expressed. *Id*. at 842-43. However, if the statutes are silent or ambiguous with respect to the specific issue, the second question becomes whether VA's interpretation is based on a permissible construction of the statutes. *See id.* at 843. Within the complex veterans benefits scheme, if VA's interpretation of the statutes is reasonable, the courts are precluded from substituting their judgment for that of VA, unless the Secretary has exceeded his authority; the Secretary's action was clearly wrong; or the Secretary's interpretation is unfavorable to veterans, such that it conflicts with the beneficence underpinning VA's veterans benefits scheme, and a more liberal construction is available that affords a harmonious interplay between provisions. *See Brown v. Gardner*, 513 U.S. 115, 117-18 (1994); *Train v. Nat'l Res. Def. Council, Inc.*, 421 U.S. 60, 87 (1975); *U.S. v. Shimer*, 367 U.S. 374, 382 (1961); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946).

3

## A. 38 U.S.C. § 1151

To decide the correct application of section 5013A to section 1151, we start by reviewing the language of 38 U.S.C. § 1151(a) to determine the type of benefit at issue. Section 1151(a) states:

> Compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded for a qualifying additional disability or a qualifying death of a veteran in the same manner as if such additional disability or death were service-connected. For purposes of this section, a disability or death is a qualifying additional disability or qualifying death if the disability or death was not the result of the veteran's willful misconduct and [setting forth other requirements].

38 U.S.C. § 1151(a); *see U.S. v. Turkette*, 452 U.S. 576, 580 (1981) ("In determining the scope of a statute, we look first to its language."). The plain language of section 1151(a) unequivocally lists two possible types of benefits available under the provision: (1) compensation for an additional qualifying disability or (2) dependency and indemnity compensation (DIC) for the qualifying death of a veteran. *See* 38 U.S.C. § 101(13) ("The term 'compensation' means a monthly payment made by the Secretary to a veteran because of service-connected disability, . . .").

Although the language of section 1151 does not explicitly state that the compensation awarded "under this chapter" is disability compensation, a common sense reading dictates that compensation for an additional qualifying disability under a statutory section titled "Benefits for persons disabled by treatment or vocational rehabilitation," which is under a chapter titled "Compensation for Service-Connected Disability or Death," is properly considered to be disability compensation, as opposed to a hitherto unidentified compensation type. *See* 38 U.S.C. § 1151; *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("It is 'a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995))). Indeed, such a reading is harmonious with 38 U.S.C. § 5110(c), which explains that "[t]he effective date of an award of *disability compensation* by reason of section 1151 of this title shall be the date such injury or aggravation was suffered if an application therefor is received within one year from such date" (emphasis added). *See id.*; *Fishgold*, *supra*; *Gaston v. Shinseki*, 605 F.3d 979, 983 n.2 (Fed. Cir. 2010) (noting that 38 U.S.C. § 5110(c) specifies the "effective date of *disability compensation* under 38 U.S.C. § 1151"(emphasis added)).

Further, such a straightforward reading is in keeping with the well-established purpose of section 1151. Although the language of section 1151 has been modified over the years, its underlying purpose of providing compensation to veterans disabled as a result of training or treatment for their injuries, has not significantly changed. *See Kilpatrick v. Principi*, 327 F.3d 1375, 1379 (Fed. Cir. 2003); *Bartlett v. Shinseki*, 24 Vet.App. 328, 330-331 (2011); *see also Gardner,* 513 U.S. at 116, n.1 ("Section 1151 is invoked typically to provide benefits to veterans for nonservice related disabilities, although it is not so limited by its terms."); *Mansfield v. Peake*, 525 F.3d 1312, 1314 (Fed. Cir. 2008) ("In general terms, section 1151 provides that veterans disabled as a result of negligent treatment at VA medical facilities shall be compensated as if their disabilities are service-connected."); *Alleman v. Principi*, 349 F.3d 1368, 1370 (Fed. Cir. 2003) ("Section 1151 does not accord service-connected status to a veteran's disability or death, but rather provides that in certain instances a veteran's disability or death will be treated 'as if' it were service-connected for certain purposes.").

Hence, this Court has routinely referred to section 1151 compensation claims as disability compensation claims. *See Bartlett,* 24 Vet.App. at 329 (summarizing the Board decision as one that "denied his claim for disability compensation pursuant to 38 U.S.C. § 1151"); *Ingram v. Nicholson*, 21 Vet.App. 232, 247-48 (2007) (explaining that in regard to a 1151 claim "there was nothing in the August 1986 RO [(regional office)] decision or cover letter that informed Mr. Ingram of anything that might relate to a disability compensation claim"); *Kilpatrick v. Principi*, 16 Vet.App. 1, 4 (2002) ("Although section 1151(a) provides for the payment of compensation (disability compensation under chapter 11 or dependency and indemnity compensation under chapter 13) to the class of beneficiaries to which the appellant belongs, the parties seem to have forgotten that the appellant is seeking benefits . . . ."), *aff'd* 327 F.3d 1375 (Fed. Cir. 2003); *Cottle v. Principi*, 14 Vet.App. 329, 334 (2001) ("Section 1151 states that a veteran who was injured as the result of 'the pursuit of a course of vocational rehabilitation,' shall be awarded disability compensation."); *Jones v. West*, 12 Vet.App. 460, 461 (1999) (explaining that the Board denied a claim as not well grounded "inter alia, a claim for [VA] disability compensation pursuant to 38 U.S.C. § 1151 for residuals of a fall at a VA hospital."); *see also Cogburn v. Shinseki*, 24 Vet.App. 205, 212-13 (2010) (quoting the finding in *Ingram*, 21 Vet.App. at 247-48, that "'he had no reason to know how a disability

compensation claim based on section 1151 might have been decided by the regional office'"); *Green v. Brown*, 10 Vet.App. 111, 118 (1997) (summarizing the Federal Circuit's decision in *Gardner v. Brown*, 5 F.3d 1456, 1458 (Fed. Cir. 1993) as "VA could not by regulation add to an entitlement to disability compensation established under 38 U.S.C. § 1151 . . . . "); *cf. Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute . . . . [W]here . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law . . . ") (citations omitted).

The Federal Circuit has similarly referred to compensation under section 1151 as "disability compensation." *See Gaston*, *supra*; *Seymour v. Principi*, 245 F.3d 1377, 1380 (Fed. Cir. 2001) ("Congress has specifically provided that disability compensation under section 1151 is 'awarded in the same manner as if such disability . . . were service connected.'" ); *see also Adams v. Shinseki*, 568 F.3d 956, 962 (Fed. Cir. 2009) (explaining that in *Ingram* "the regional office's explanation of its rejection of Mr. Ingram's non-service-connection claim for pension benefits did not give Mr. Ingram reasonable notice that it was also rejecting his claim for disability compensation under section 1151").

Although scant, the available legislative history supports the Courts' interpretation of the term "disability compensation" as including section 1151 compensation claims. *See* S.Rep. 103-280 (June 7, 1994) ("Section 1151 of title 38, United States Code, governs claims for disability compensation or dependency and indemnity compensation . . . ."); S.Rep. 87-2042 (Sept. 13, 1962) ("It is possible today for an injured veteran to secure a judgment under the Federal Tort Claims Act and thereafter be awarded disability compensation from the Veterans' Administration for the same injury.").

However, the appellant argues that a section 1151 claim is not a disability compensation claim under the definition provided in *Wood v. Peake*, 520 F.3d 1345, 1349 n. 3 (Fed. Cir. 2008). In *Wood,* the Federal Circuit explained that the government had conceded that a DIC claim was not a disability compensation claim, and noted:

> The VA defines "disability compensation" as "a monthly payment made by the Department of Veterans Affairs to a veteran because of service-connected disability . . . . if the veteran is disabled as the result of a personal injury or disease (including

6

aggravation of a condition existing prior to service) while in active service if the injury or disease was incurred or aggravated in line of duty." 38 C.F.R. § 3.4(a), (b)(1). Thus, as the government conceded, payments to a widow or widower of a veteran are not "disability compensation."

*Wood*, 520 F.3d at 1349, n. 3; *see DeLaRosa v. Peake*, 515 F.3d 1319, 1321-22 (Fed. Cir. 2008) (explaining that § 5103A(a) applies to any "benefit under a law administered by the Secretary" and thus encompasses DIC claims, but that § 5103A(d) only applies to "claim[s] for disability compensation," which does not include DIC claims.)

The Federal Circuit's dictum in *Wood* occurred in the context of a Chapter 13 DIC case where any reference to section 1151 would have been unnecessary and the resulting language was obviously not intended to apply outside of the narrow context of DIC claims. *See Wood*, *supra*; *DeLaRosa*, 515 F.3d at 1322 n.1. In both *Wood* and *DeLaRosa*, the Federal Circuit was discussing only DIC, which is listed separately from compensation within section 1151. 38 U.S.C. § 1151(a) ("Compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded . . . "). Additionally, the definition provided by the Federal Circuit is constructed from two separate parts of 38 C.F.R. § 3.4—(a) and (b)(1). *See* 38 C.F.R. § 3.4 (a), (b)(1) (2012). Section 3.4(a) defines the term "compensation," while § 3.4 (b)(1) explains that "basic entitlement" to disability compensation exists when a veteran has a personal injury or disease incurred while in active service. *Compare* 38 U.S.C. § 1110 (Basic entitlement) *with* 38 U.S.C. § 1151 (Benefits for persons disabled by treatment or vocational rehabilitation). Thus, although not explicitly stated, the Federal Circuit was, at most, defining "basic entitlement to disability compensation" only. Indeed, subsequent to *Wood* and *DeLaRosa*, the Federal Circuit took no issue with the language of 38 C.F.R. § 3.154, which, since 2004, has stated: "VA may accept as a claim for benefits under 38 U.S.C. § 1151 and § 3.361 any communication in writing indicating an intent to file a claim for *disability compensation or dependency and indemnity compensation* under the laws governing entitlement to veterans' benefits for disability or death . . . ." (emphasis added). 38 C.F.R. § 3.154 (2012); *see Mansfield*, 525 F.3d at 1318. Thus, the Federal Circuit's definition

of basic entitlement to disability compensation in the context of a DIC claim should not be construed as implying that section 1151 compensation is not "disability compensation."[1]

In sum, even if the language of section 1151 does not explicitly define what type of compensation is awarded for an additional qualifying disability, the Secretary's construction that a section 1151 compensation claim, as opposed to a section 1151 DIC claim, is considered a claim for disability compensation within the veterans benefits schema is not only reasonable, but also the only rational interpretation that allows for harmony between separate provisions of title 38, chapter 11 of the United States Code. *See Turkette*, *supra*. Therefore, the Court holds that a section 1151 compensation claim is considered a disability compensation claim for the purposes of determining what part of section 5103A applies.

## B. 38 U.S.C. § 5103A

Under section 5103A(d), titled "Medical examinations for compensation claims," part (d)(1) clarifies that "[i]n the case of a claim for *disability compensation*, the assistance provided by the Secretary under subsection (a) shall include providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim." 38 U.S.C. § 5103A(d)(1) (emphasis added). Thus, section 5103A(d)(1) applies to a section 1151 disability compensation claim. *See* 38 U.S.C. §§ 1151, 5103A(d)(1), 5110(c); *see also Traynor v. Turnage*, 485 U.S. 535, 545–46 (1988) (assuming that Congress was aware of VA interpretation of "willful misconduct" when it enacted new law using that term "and that Congress intended that the term receive the same meaning for purposes of that statute as it had received for purposes of other veterans' benefits statutes").

However, the application of section 5103A(d)(2) to a section 1151 compensation claim is not so easily addressed.[2] For instance, section 5103A(d)(2)(B) requires evidence of record that

---

[1] Regarding the appellant's contention that "the basic holding of *Wood* is clear, and binding: As used in [s]ection 5103A(d), 'disability compensation' only refers to claims for service-connection" (App. Resp. at 6), the dictum in *Wood* does not suggest that the Federal Circuit found that section 1151 compensation is not to be considered "as if" it were service-connected for purposes of applying the term "disability compensation." *See* 38 U.S.C. § 1151(a); *Wood*, *supra*.

[2] 38 U.S.C. § 5103A(d)(2) states in full:

The Secretary shall treat an examination or opinion as being necessary to make a decision on a claim

"indicates" a disability or symptoms may be associated with "active military, naval, or air service," but, in a section 1151 compensation claim, as in this case, the disability or symptoms are not necessarily associated with active duty service. *See* 38 U.S.C. §§ 1151(a), 5103A(d)(2)(B); *Gardner*, 513 U.S. at 117 n.1. Although section 1151 compensation is to be awarded in the same manner "as if" an additional qualifying disability were service connected, neither section 1151 nor 5103A specifies how the factors under section 5103A(d)(2) should apply to a section 1151 compensation claim in which the disability or symptoms are not directly related to the claimant's active duty service. *See* 38 U.S.C. §§ 1151, 5103A; *Alleman*, *supra*.

The appellant argues that, because the language of section 5103A(d)(2) "is silent regarding what other kinds of evidence might make a medical opinion necessary in other kinds of claims, like Section 1151 claims," that "[s]ection 5103A(a)'s description of when the duty to assist engages–when the evidence is 'necessary to substantiate the claimant's claim' and when a 'reasonable possibility exists' that such help would aid the claimant–must fill that void." App. Response to the Court's July 18, 2012, Order (Resp.) at 6. The Secretary counters that, although the language of section 5103A(d)(2)(B) applies specifically to basic entitlement to service-connection claims, that it is VA's reasonable policy to look to the factors under section 5103A(d)(2) as guidance when determining whether an examination is necessary in a section 1151 disability compensation claim. *See* Sec. Resp. at 3, 6, 9.

To the extent that the appellant suggests that section 5103A(d)(1) could be applied in isolation, the plain language of section 5103A(d)(2) disproves such an interpretation, stating that "[t]he Secretary shall treat an examination or opinion as being necessary to make a decision on a claim for purposes of paragraph (1) if the evidence of record . . . " before listing factors that must be

---

for purposes of paragraph (1) if the evidence of record before the Secretary, taking into consideration all information and lay or medical evidence (including statements of the claimant) --
    (A) contains competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability; and
    (B) indicates that the disability or symptoms may be associated with the claimant's active military, naval, or air service; but
    (C) does not contain sufficient medical evidence for the Secretary to make a decision on the claim.

met before a medical examination or opinion is required in a disability compensation claim. 38 U.S.C. § 5103A(d); *see Wells v. Principi*, 326 F.3d 1381, 1384 (Fed. Cir. 2003) (explaining that no basis was presented to support the appellant's contention at oral argument that section 5103A(d) triggers an obligation for the Secretary to provide a medical examination or opinion regardless of the specific provisions under 5103A(d), which limit the Secretary's obligation). Additionally, the appellant's suggestion that the Court interpret section 5103A(d)(1) as having the same requirements as those under section 5103A(a) in a section 1151 compensation claim, would make section 5103A(d)(1) redundant and section 5103A(d)(2) superfluous. Such an interpretation violates the well-established interpretive canon that a "'statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. U.S.*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see Hornick v. Shinseki*, 24 Vet.App. 50, 52, 55 (2010) (explaining that "the plain meaning of any statutory provision must be determined in light of the statutory scheme as a whole" and the Court should interpret statutory provisions in the same subchapter of title 38 as producing a harmonious whole); *Cottle*, 14 Vet.App. at 334 (each section or part of a statute should be construed with every other part of section to produce a harmonious whole (citing *Meeks v. West*, 12 Vet.App. 352, 354 (1999))). Thus, section 5103A(d)(1) must be read in conjunction with 5103A(d)(2).

Because section 5103A(d)(1) applies to a section 1151 compensation claim and section 5103A(d)(1) cannot be read in isolation, the Court agrees with the Secretary that it is useful and consistent with the treatment of other disability claims to interpret the factors under 5103A(d)(2) broadly to determine when a medical examination or opinion must be provided in a section 1151 compensation claim. *Cf. Zenith Radio Corp. v. United States*, 437 U.S. 443, 450 (1978) ("Moreover, an administrative 'practice has peculiar weight when it involves a contemporaneous construction of a statute by the [persons] charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new." (quoting *Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 315 (1933))). Thus, the question becomes: In a section 1151 compensation claim, what interpretations of the factors under 5103A(d)(2) are permissible? *See Chevron*, 467 U.S. at 843; *see Brown & Williamson Tobacco*

10

*Corp.*, 529 U.S. at 132 ("[I]f Congress has not specifically addressed the question, a reviewing court must respect the agency's construction of a statute so long as it is permissible.").

### C. Interpreting the Factors Under Section 5103A(d)(2)

The Secretary concedes that "38 C.F.R. § 3.159(c)(4) is the implementing regulation for 38 U.S.C. § 5103A(d), but notes that in regard to the applicability of the standards set-forth in both to[sic] a Veteran's claim for disability benefits under section 1151, [§] 3.159(c)(4) is similarly silent." Sec. Resp. at 6, n.1 (citing to *Sharp v. Shinseki*, 23 Vet.App. 267, 275 (2009), for the proposition that "[d]eference to the regulation that offers no additional clarity to the interpretive issue would be inappropriate."). Although the Secretary has not prescribed a regulation pertaining to the application of section 5103A(d) to section 1151 compensation claims, the Court will review his current interpretations and provide guidance on interpreting the section 5103A(d)(2) factors to effectuate a purposeful remand. *See* 38 U.S.C. § 5103A(e); *Zenith Radio Corp.*, 437 U.S. at 450 ("longstanding and consistent administrative interpretation is entitled to considerable weight."); *Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (noting that additional arguments may be addressed to provide guidance to a lower tribunal).

### i. Factor 5103A(d)(2)(A) and Factor 5103A(d)(2)(C)

According to the first factor under section 5103A(d)(2) (factor A), a medical examination or opinion is necessary to make a decision on a claim if the evidence of record, along with the requirements under the other factors, "contains competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability . . . " 38 U.S.C. § 5103A(d)(2)(A). The Secretary asserts that in the context of a section 1151 compensation claim, factor A should be interpreted in the same manner as it is in a non-section 1151 disability compensation claim. Sec. Resp. at 12-13. The Court discerns no difficulty or irrationality with the application of factor A to a section 1151 disability compensation claim in a manner similar to that used in basic entitlement to disability compensation claims—if there is no competent evidence of a current disability or persistent or recurrent symptoms of a disability, then a medical examination or opinion is not mandated by statute. *See* 38 U.S.C. § 5103A(d)(2)(A). Such a straightforward application of factor A is also most favorable to veterans, as it does not require the weighing of competing facts,

but rather the assessment of the existence of such evidence in the record and whether such evidence is competent. *See Gardner*, 513 U.S. at 117-18; *McLendon*, 20 Vet.App. at 81-82.[3]

As to factor 5103A(d)(2)(C) (factor C), taking into account the requirements of the other factors, it mandates that a medical examination or opinion be provided when the record before the Secretary "does not contain sufficient medical evidence for the Secretary to make a decision on the claim." 38 U.S.C. § 5103A(d)(2)(C). The Court agrees that there is no need to interpret factor C any differently for a section 1151 compensation claim than for a basic entitlement disability compensation claim, because the plain language applies effortlessly to both. *See id.*; *McLendon*, 20 Vet.App. at 84-85; Sec. Resp. at 12-13.

### ii. Factor 5103A(d)(2)(B)

Factor 5103A(d)(2)(B) (factor B) states that a medical examination or opinion is mandated, in conjunction with the requirements of factors A and C, if the evidence of record before the Secretary "indicates that the disability or symptoms may be associated with the claimant's active military, naval, or air service; . . . ." 38 U.S.C. § 5103A(d)(2)(B). As explained above, the language of factor B must be interpreted broadly because a section 1151 compensation claim does not require that there be an association between the disability or symptoms and the claimant's "active military, naval, or air service." *See* 38 U.S.C. § 1151(a); *Gardner*, *supra*.

The Secretary contends that VA "reasonably inquires . . . whether there is evidence supporting the material components of a section 1151 claim" when assessing whether a medical opinion is necessary. Sec. Resp. at 12. Specifically, the Secretary asserts that, when adjudicating a section 1151 compensation claim, it is reasonable to interpret factor B as meaning "an indication that said disability or symptoms [may] be associated with carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA, or an event not reasonably foreseeable, in the treatment VA provided a claimant." *Id*. at 13. According to the Secretary's

---

[3]Although the existence of an additional qualifying disability must be ascertained for disability compensation benefits to be awarded under section 1151, such a determination is separate from the application of the duty to assist factors under section 5103A(d)(2), which should generally be reviewed prior to any determination regarding the granting of benefits. *Compare* 38 C.F.R. § 3.361(b) (2012) *with* 38 C.F.R. § 3.159(c)(4) (2012); *see also Veterans Benefits Administration Adjudication Procedures Manual* M21-1 MR (M21-1MR), pt. IV, Subpart ii, ch. 2, sec. G(33)(c) (2011) (Under the "General Information on Entitlement to Benefits Under 38 U.S.C. 1151," a discussion about "Determining Whether Additional Disability Exists").

interpretation, the language "may be associated" includes an element of causation. In effect, not only does the evidence have to indicate that there was VA treatment, but that the treatment may have caused the disability or symptoms. *See id*.; *cf.* 38 C.F.R. § 3.159 (c)(4)(i)(B),(C). As the Federal Circuit explained in *Wells*, *supra*, having a disability without any causal connection is insufficient to obligate the Secretary to provide a medical opinion or examination. *See also Chotta v. Peake*, 22 Vet.App. 80, 85 (2008) (interpreting *McLendon* to mean that the duty to provide a medical examination applies "only once the evidence has met the minimal threshold of indicating the existence of a medical question" because the duty to assist does not require a fishing expedition to substantiate a completely unsupported claim (quoting *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992) and citing to 38 U.S.C. § 5103A(a)(2))). Thus, the Secretary's interpretation appears reasonable in that it properly effectuates the intent of section 5103A(d)(2) and complies with legal precedent. The Court holds that the language "may be associated" requires that the evidence of record indicate a causal connection between the current disability and the VA treatment before VA is required to provide a medical examination or opinion. 38 U.S.C. § 5103A(d)(2). However, in light of the purpose of section 5103A and our analysis in *McLendon*, the nature of a causal connection in this interpretation necessitates further discussion.

Congress perceived significant barriers to veterans who needed assistance in obtaining information and evidence to receive benefits from VA, and eliminated the well-grounded-claim requirement by enacting the Veterans Claims Assistance Act of 2000 (VCAA), which was later codified, in part, as 38 U.S.C. § 5103A. *Duenas v. Principi*, 18 Vet.App. 512, 516 (2004) (per curiam). Prior to the enactment of the VCAA and the filing of the appellant's claim, this Court explained in *Jones v. West*, 12 Vet.App. 460, 464 (1999), that the requirements of a well-grounded section 1151 compensation claim were:

> paralleling those [requirements] set forth in *Caluza*[*v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table)] generally as follows: (1) Medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of incurrence or aggravation of an injury as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation under chapter 31 of title 38, United States Code; and (3) medical evidence of a nexus between that asserted injury or disease and the current disability.

Today, a section 1151 compensation claim does not need to meet the requirements of being well-grounded for VA to have a duty to assist. *See* 38 U.S.C. § 5103A. Indeed, this Court has explained that, in a basic entitlement disability compensation claim, factor B only requires that the evidence meet a low threshold, such that the evidence "indicates" that there "may" be a nexus between the disability (or persistent or recurrent symptoms of a disability) and military service. *McLendon*, 20 Vet.App. at 83; *see Alleman*, *supra*; *cf. Jones*, 12 Vet.App. at 463 (treating the veteran's claim for an additional disability under section 1151 as it would a claim for service connection). Therefore, in keeping with this Court's determinations in *McLendon*, in a section 1151 disability compensation claim, the threshold under factor B must be equally low.

Thus, when applying factor 5103A(d)(2)(B) to a section 1151 compensation claim, the Secretary may not require that the evidence of record be sufficient to *prove* a nexus between the asserted injury or event and the current disability. *See McLendon*, 20 Vet.App. at 84 ("Indeed, in this instance, although the medical evidence was deemed insufficient to *establish* a nexus, that evidence, together with other evidence of record, may nevertheless be sufficient for the Board to conclude that it 'indicates' that Mr. McLendon's current disability 'may be associated' with . . . . "). Nor may the Secretary require that the record provide competent medical evidence that an "additional disability resulted as a consequence of negligence, careless[ness], or other fault on the part of VA, or an event not reasonably foreseeable," prior to determining whether a medical opinion must be provided. R. at 6 (standard used by the Board). Mandating that the record include competent medical evidence of fault, before receiving a medical opinion as to whether VA failed to exercise the degree of care that would be expected of a reasonable health care provider, would potentially defeat the purpose of not having to present a well-grounded section 1151 compensation claim. *Compare* 38 U.S.C. § 5103A(d)(2) *with Jones*, 12 Vet.App. at 464; *see also* 38 C.F.R. § 3.361(d)(i); M21-1 MR, pt. III, Subpart iv, ch. 3, sec. A(9)(f) (2011) (when requesting a medical opinion in a 1151 claim, the provider should be asked, in pertinent part, to "state whether it is as least as likely as not that–the claimed disability was caused by or became worse as a result of the VA treatment at issue . . . – failure on the part of VA to timely diagnose and/or properly treat the claimed disease or disability allowed the disease or disability to continue to progress"); *Jandreau v. Nicholson*, 492 F.3d 1372, 1376-77 (Fed. Cir. 2009) (competent medical evidence may not be required if the determinative issue

14

involves medical etiology or medical diagnosis and there is competent lay evidence sufficient to establish a diagnosis).

Therefore, when adjudicating a section 1151 compensation claim, the Board must analyze the evidence of record to determine whether it *indicates* that the disability or symptoms *may* be associated with the hospital care, medical or surgical treatment, or examination furnished the claimant under any law administered by the Secretary, either by a Department employee or in a Department facility as defined in 38 U.S.C. § 1701(3)(A), or as part of an approved rehabilitation program under chapter 31 of title 38, or a program (know as a "compensated work therapy program") under 38 U.S.C. § 1718. *See* 38 U.S.C. §§ 1151(a)(1),(a)(2), 5103A(d)(2)(B); *McLendon*, *supra*; M21-1 MR (M21-1MR), pt. IV, Subpart ii, ch. 2, sec. G(35)(d) (When preparing a rating decision, VA advises: "Do not make uncorroborated conclusions in the rating decision that a relationship between the treatment, surgery, or medication provided and the claimed disability does not exist.")

## III. REVIEW OF THE OCTOBER 5, 2010, BOARD DECISION

### A. The Duty to Provide a Medical Opinion

In regard to both of the appellant's theories for entitlement to section 1151 compensation—that VA failed to timely diagnose his recurrent breast cancer and misdiagnosed his mental condition—the Board recognized "that assistance shall include providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim." R. at 6 (citing to section 5103A(d) and *McLendon*). However, the Board thereafter not only failed to discuss the section 5103A(d)(2) factors with any specificity, but implied that a medical opinion did not need to be provided because "the record is absent for competent medical evidence that additional disability resulted as a consequence of negligence, careless[ness], or other fault on the part of VA, or an event not reasonable foreseeable." *Id*. As discussed above, the finding that a medical opinion is not warranted because the evidence of record does not include competent medical evidence of fault on the part of VA is legally untenable, because under factor 5103A(d)(2)(B), the evidence must only "indicate" that there "may" be an association between a current disability and VA treatment. *See* 38 U.S.C. § 5103A(d)(2)(B); *see also* M21-1 MR, pt. IV, Subpart ii, ch. 2, sec. G(34)(b).

15

In addition to the Board's general misinterpretation of section 5103A(d), for the following reasons the claim on appeal will be remanded. *See Mayfield v. Nicholson*, 19 Vet.App. 103, 116 (2005) (stating that the key to determining whether an error is prejudicial is the effect of the error on the essential fairness of the adjudication), *rev'd on other grounds*, 444 F.3d 1328 (Fed. Cir. 2006).

1. Failure to Timely Diagnose.

In regard to the appellant's first theory of injury under section 1151—that VA failed to timely diagnose his recurring breast cancer such that his mental disability occurred or worsened— the Board initially stated that a medical opinion was not warranted because there was no competent medical evidence of causation and the appellant was not competent to provide lay testimony as to the complex medical question of causation. *See* R. at 6, 8. Thereafter, the Board again explained that the appellant "as a layperson, is not competent to comment on the timeliness of a diagnosis of cancer, such as in this case." R. at 15 (citing broadly to *Jandreau* for the proposition that "a veteran is competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions"). However, this finding did not deter the Board from itself determining that "[t]here is nothing in the medical records from VA to suggest that the diagnosis of breast cancer was not made in a timely fashion." R. at 15. Although this latter determination appears within the Board's analysis of the merits of the section 1151 compensation claim, it indicates that the Board failed to appreciate that it is restricted from making unsubstantiated medical determinations and considering the absence of evidence as substantive negative evidence, including when deciding whether it has complied with the duty to assist provisions. *Compare* R. at 6 *with* R. at 15; *see Buczynski v. Shinseki*, 24 Vet.App. 221, 224 (2011) ("When assessing a claim, the Board may not consider the absence of evidence as substantive negative evidence."); *Duenas*, 18 Vet.App. at 516 (explaining that whether a claimant prevails on the merits of a 1151 compensation claim remains a separate matter from whether VA has a duty to assist under section 5103A(d)); *Santiago v. Brown*, 5 Vet.App. 288, 292 (1993) (citing *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991), *overruled on other grounds by Hodge v. West*, 155 F.3d 1356, 1360 (Fed. Cir. 1998)). Thus, the Board not only misinterpreted factor B as requiring competent medical evidence of VA fault, but also provided inadequate reasons or bases for its determination that a medical opinion was not warranted in regard to whether VA failed to timely diagnose the appellant's breast

cancer. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Caluza*, *supra*; *Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).

However, the Board did make certain findings of fact that remain undisputed by the parties: (1) "In February 2005 the Veteran presented at the Kansas City VA Medical Center (VAMC) to establish care" (R. at 9); (2) "At this time, he expressed that he desired to use the VAMC to check up on possible breast cancer" (R. at 9); (3) the appellant missed his September 2005 appointment, and in November 2005, he again requested a breast cancer check-up (R. at 725); (4) the appellant was seen for several psychiatric evaluations at the VAMC thereafter (R. at 7-9); (5) in September 2006, "[t]he Veteran also talked about recently finding another breast lump" (R. at 11), and he underwent a biopsy later that month (R. at 12); (6) the appellant stated that he "went into a serious state of depression as [he] felt that [he] was not properly treated" (R. at 13); the appellant was subsequently diagnosed with dysthimic disorder and depression (R. at 14). *See* App. Br. at 1-4; Sec. Br. at 2, 9-10.

These undisputed findings, taken as a whole, unequivocally "indicate" that there "may be an association" between the appellant's current mental disability and his VAMC treatment, which included an approximately 11-month gap between a repeated request for a breast cancer check-up and a diagnosis of recurrent breast cancer.[4] *See* 38 U.S.C. § 5103A(d)(2)(A),(B); *see also Cantu v. Principi*, 18 Vet.App. 92, 99-100 (2004) (applying the plain meaning of 38 U.S.C. § 1710 to the undisputed facts of the case to conclude that the appellant met the eligibility criteria for VA hospital care). It is also clear from the Board's statements that the record does not contain "sufficient medical evidence for the Secretary to make a decision on the claim." 38 U.S.C. § 5103A(d)(2)(C). Therefore, the Board clearly erred in finding that VA had substantially complied with "assistance requirements." R. at 6; *see Gilbert*, 1 Vet.App. at 52. On remand, the Board must provide the

---

[4]To the extent that the appellant suggested, during oral argument, that he might have also suffered a physical injury, separate from a mental disability, due to the alleged delay in breast cancer treatment, such a claim was not presented to the Board. Thus, the Court does not have jurisdiction over it. *See Seri v. Nicholson*, 21 Vet.App. 441, 443 (2007); *Tubianosa v. Derwinski,* 3 Vet.App. 181, 184 (1992) (a party before the Court should develop and present *all* of its arguments in its initial pleading).

appellant with a medical opinion pursuant to 38 U.S.C. § 5103A(d). *Cf.* M21-1MR, pt. III, Subpart iv, ch. 3, sec. A(9)(f) ("Instructions for Providing Medical Opinions–1151 Claims").[5]

## 2. Misdiagnosis

As to the appellant's second theory of injury under section 1151—that VA misdiagnosed him with bipolar disorder, which, in turn, caused or aggravated his mental disability—the Board provided the same erroneous analysis as it had for the appellant's first theory. *See* R. at 6, 8. However, unlike the appellant's first theory, several pertinent facts are disputed as to this theory, such that the Court cannot conclude that there is unequivocally an indication that the appellant's current mental disability may be associated with VA treatment. *See* 38 U.S.C. § 5103A(d)(2)(B); R. at 9, 16.

Because the Board failed to discuss whether the evidence of record indicated that there may be an association between the appellant's current disability and VA treatment, it provided inadequate reasons or bases for its determination that the duty to assist was met. *See* 38 U.S.C. § 7104(d)(1); *Allday* and *Gilbert*, both *supra*. On remand, the Board must provide a detailed analysis of its application of section 5103A(d)(2) to the pertinent facts surrounding the appellant's current mental disability and diagnoses.

## B. The Duty to Assist in Obtaining Medical Records

In addition, the Board found that "[a]ll known and available records relevant to the issues on appeal have been obtained." R. at 5. The appellant argues that the Board failed to obtain records of his University of Kansas Medical Center (KUMC) cancer treatment, which was provided concurrently with some of his VAMC cancer treatment by a physician who also worked at the VAMC. R. at 624, 683; App. Br. at 25-26. It appears that some portion of the appellant's private cancer treatment records were faxed from the KUMC to the VAMC. R. at 618.

Any KUMC records in the possession of VA prior to the Board's decision on appeal were also constructively before the Board. *See Bell v. Derwinski*, 2 Vet.App. 611, 613 (1992). It is unclear from the record before the Court and from the parties' arguments exactly what records VA

[5]In requiring the Secretary to order a medical opinion based on the undisputed facts of this case, the Court is not suggesting these facts necessarily prove that there was fault on the part of VA, or that the appellant's claimed disability was caused by or became worse as a result of VA medical conduct, or that any of the latter diagnoses constitute an additional qualifying disability. *See* 38 U.S.C. § 1151. While such questions are integral to an analysis of the merits of a section 1151 compensation claim, they are not pertinent inquiries when determining the Secretary's duty to assist under the low threshold requirements of factor 5103A(d)(2)(B). *See Duenas*, *supra*.

may or may not have in its possession, but it appears that such records may be relevant to the claim on appeal. *See* R. at 9, 11, 618. On remand, because there appears to be some concern that a prior release of information authorization (ROI) is no longer viable, the appellant must provide an updated ROI for VA. Thereafter, VA is required to attempt to obtain all of the appellant's KUMC medical records pertaining to his mental disability and cancer treatment. *See* 38 U.S.C. § 5103A(b); *Golz v. Shinseki*, 590 F.3d 1317, 1320-21 (Fed. Cir. 2010). Upon receipt of any additional medical records, and before any additional medical opinions are undertaken, VA is required to add such records to the appellant's claims file.

## IV. CONCLUSION

Based on the foregoing, the October 5, 2010, decision of the Board is VACATED and this matter is REMANDED for adjudication consistent with this opinion.

HAGEL, *Judge*, concurring in the result: I fully concur in the result in this case, but I write separately to express my concern over the majority's resolution of the central issue. A panel was convened to decide, in the context of a claim for benefits under 38 U.S.C. § 1151, whether 38 U.S.C. § 5103A(a) or 38 U.S.C. § 5103A(d) controls the determination of whether VA must provide a medical examination or opinion. Based on a plain reading of the applicable statutes, and the precedential decisions of this court and the U.S. Court of Appeals for the Federal Circuit, I conclude that the proper standard for determining whether a medical examination or opinion should be ordered in a claim for benefits under section 1151 is provided under 38 U.S.C § 5103A(a). However, because analysis under section 5103A(a) yields the same result as did the majority using section 5103A(d), I concur in the result.

### A. Plain Meaning

Foremost, a plain reading of the relevant statutes requires this conclusion. A fundamental canon of statutory construction is that the words of a statute are given "their 'ordinary, contemporary, common meaning,' absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (quoting *Walters v. Metropolitan Ed. Enterprises, Inc.*, 519 U.S. 202, 207 (1997); *see Smith v. United States*, 508 U.S. 223 (1993) (citing *Perrin v. United*

19

*States*, 444 U.S. 37, 42, (1979) (stating that "[U]nless otherwise defined, words [in a statute] will be interpreted as taking their ordinary, contemporary, common meaning")). Section 5103A(d)(1) explicitly concerns "a claim for disability compensation," while section 5103A(a) does not. Thus, we must determine whether a claim made under 38 U.S.C. § 1151 is properly construed as "a claim for disability compensation." The plain meaning of "disability compensation" dictates that it is not.

First, 38 C.F.R. § 3.4(b)(1) states that "[b]asic entitlement [for disability compensation] for a veteran exists if the veteran is disabled as the result of a personal injury or disease (including aggravation of a condition existing prior to service) while in active service if the injury or disease was incurred or aggravated in the line of duty." 38 C.F.R. § 3.4(b)(1)(2012). The focus of this regulation is that the injury or disease was "incurred or aggravated *in the line of duty*." *Id.* (emphasis added). "In the line of duty" is defined as "an injury or disease incurred or aggravated during a period of active military, naval, or air service unless such injury or disease was the result of the veteran's own willful misconduct . . . ." 38 C.F.R. § 3.1(m)(2012).

Here, Mr. Trafter sought compensation under section 1151 based on two theories: (1) that VA medical personnel failed to timely diagnose and treat his breast cancer, which led to the development or aggravation of his mental disability; and (2) that VA misdiagnosed him with bipolar disorder, which, in turn, caused or aggravated his mental disability. R. at 8. Section 1151 provides that compensation shall be awarded for an additional disability or death "in the same manner as if such additional disability or death were service-connected," if the additional disability or death was not the result of the veteran's willful misconduct and:

> (1) the disability or death was caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary . . . and the proximate cause of the disability or death was–
>
> > (A) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; or
> >
> > (B) an event not reasonably foreseeable.

38 U.S.C. § 1151(a).

The premise behind compensation under section 1151 is that the veteran suffered an additional disability or death as the result of training, hospital care, medical or surgical treatment, compensated work therapy, or an examination furnished by VA, not by injury or disease incurred or aggravated while in active service. 38 U.S.C. § 1151; 38 C.F.R. § 3.361 (2012). Thus, Mr. Trafter's theories of entitlement to compensation are premised on negligence on the part of VA, not that his depression was incurred or aggravated in the line of duty. The factual premise underlying section 1151 claims, by the very language of the statute, does not include a disability that took place in service but is, in fact, linked to treatment *after* service.

Second, section 5103A(d)(2)(B) explicitly provides that, when the Secretary is determining whether a medical examination or opinion is "necessary to make a decision on a claim," the evidence of record must "indicate[] that the disability or symptoms may be associated with the claimant's active military, naval, or air service." The term "active military, naval, or air service" includes:

(A) active duty;

(B) any period of active duty for training during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty; and

(C) any period of inactive duty training during which the individual concerned was disabled or died–

(i) from an injury incurred or aggravated in line of duty; or

(ii) from an acute myocardial infarction, a cardiac arrest, or a cerebrovascular accident occurring during such training.

38 U.S.C. § 101(24). Again, the crux of a claim made pursuant to section 1151 is negligence on the part of VA, specifically that the claimant's disability was the result of VA care or medical treatment, not as a result of his active military, naval, or air service. Thus, the plain meaning of the term "disability compensation" necessitates that the disability for which the claimant is seeking benefits is incurred in or aggravated by active military service. Entitlement to benefits under section 1151 is grounded in post-service fault of VA, not on the in-service incurrence or aggravation of a disability, benefits that are authorized under 38 U.S.C § 1110.

21

B. Prior Caselaw of This Court

Second, our own prior caselaw also supports the conclusion that section 1151 claims are not "disability compensation" claims.

Contrary to the majority's finding, this Court has previously held that, although compensation awarded to an 1151 claimant is paid in the same manner as if such additional disability were service connected, they are, in fact, two distinct claims. *See Anderson v. Principi*, 18 Vet.App. 371, 377 (2004) ("There is a legal distinction between filing a claim for service connection for a disability pursuant to 38 U.S.C. § 1110 and a claim for compensation derived from a grant of compensation pursuant to 38 U.S.C. § 1151.").[6] Further, this Court has noted that "[s]ection 1151 does not confer upon its beneficiaries the *status* of service connection; rather, section 1151 *awards compensation as if the claimant were service connected*. In other words, section 1151 nowhere provides that the *disability* is . . . to be treated generally as if it were service connected." *Kilpatrick v. Principi*, 16 Vet.App. 1, 5 (2002), *aff'd*, 327 F.3d 1375 (Fed. Cir. 2003). A section 1151 claim "constitutes a separate and distinct claim for VA benefits." *Anderson*, 18 Vet.App.at 377. Thus, this Court's case law has consistently distinguished claims made pursuant to section 1151 and claims for disability compensation pursuant to section 1110.

C. The United States Court of Appeals for the Federal Circuit (Federal Circuit) Precedent

The Federal Circuit has also drawn a distinction between "disability compensation" and other benefits administered by the Secretary. Section 5103A(a) provides that:

> (1) The Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a *benefit under a law administered by the Secretary*. (2) The Secretary is not required to provide assistance to a claimant under this section if no reasonable possibility exists that such assistance would aid in substantiating the claim.

38 U.S.C. 5103A(a)(1, 2) (emphasis added). This general language contrasts starkly with the more specific "disability compensation" language used as the predicate for applying section 5103A(d).

In *Wood v. Peake*, 520 F.3d. 1345 (Fed. Cir. 2008), the Federal Circuit determined that the "general duty to assist provision" applies when determining whether dependency and indemnity

---

[6]This Court, in an attempt to speak more specifically, has eschewed the use of the term "claim for service connection." *See Hillyard v. Shinseki*, 24 Vet.App. 343, 355 (2011).

compensation claimants are entitled to a medical examination or opinion in the development of their claims. The Federal Circuit concluded that, "[w]hile [section] 5103A(a) applies to any 'benefit under a law administered by the Secretary' and thus encompasses [dependency and indemnity compensation] claims, § 5103A(d) *only* applies to 'claim[s] for disability compensation,' which does not include [dependency and indemnity compensation] claims." *Wood*, 520 F.3d. at 1349; *see also Delarosa v. Peake*, 515 F.3d. 1319, 1322 (Fed. Cir. 2008) (noting that "[s]ection 5103A(d)(1) explicitly limits its applicability to claims for disability compensation"). Further, in a footnote the Federal Circuit noted, and the Secretary conceded, that dependency and indemnity compensation payments are *not* "disability compensation." *Wood*, 520 F.3d. at 1349 n.3. Thus, it is a logical extension that, if dependency and indemnity compensation benefits are not "disability compensation,"1151 claims also fall outside the purview of "disability compensation." Although these Federal Circuit cases were decided in the context of dependency and indemnity compensation claims, section 1151 claimants also seek compensation for injuries that are not connected to active service as defined by 38 C.F.R. § 3.4. Thus, by analogy, section 1151 claims fall into the category of "any other benefit" administered by the Secretary, and section 5103A(a) is therefore the correct standard to use to determine whether VA must provide a medical examination or opinion.

In addition, in *Alleman v. Principi*, 349 F.3d. 1368 (Fed. Cir. 2003), the Federal Circuit decided that veterans receiving benefits under section 1151 were not entitled to Service Disabled Veterans' Insurance under 38 U.S.C. § 1922. The Federal Circuit determined that section 1151 "does not accord service-connected status to a veteran's disability or death, but rather provides that in certain instances a veteran's disability or death will be treated 'as if' it were service connected." *Id.* at 1370. Further, the Federal Circuit reiterated that, "for a disability to be 'service-connected,' the disability must have been incurred or aggravated 'in the line of duty in the active military, naval, or air service.'" *Id.* (quoting 38 U.S.C. § 101(16)).

Finally, although section 1151 appears in the chapter titled "Compensation for Service-Connected Disability or Death," and in the sub-chapter "General compensation provisions" this is not inconsistent with the above analysis. The logical interpretation of this location is that the compensation awarded pursuant to section 1151 is paid in the same manner *as if* the disability was service connected, even though section 1151 benefits are not "*claim[s] for disability compensation*."

23

In light of the above discussion, I strongly believe that 38 U.S.C. § 5103A(a) provides the correct standard for when a VA medical examination or opinion is required in claims under section 1151.

## D. Comparing 5103A(a) and 5103A(d)

Sections 5103A(a) and 5103A(d) "apply wholly different and unrelated requirements," and are "dramatically different [in] scope." *Wood*, 520 F.3d. at 1349. Section 5103A(a) "requires [] VA to provide a claimant with a free medical opinion whenever such an opinion is (1) 'necessary to substantiate [the] claim,' unless (2) 'no reasonable possibility exists that such assistance would aid in substantiating [the] claim.'" *Wood*, 520 F.3d.at 1349 (quoting 38 U.S.C. § 5103A(a)). On the other hand, section 5103A(d) requires that "the claimant [] demonstrate that the record evidence (1) 'contains competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability; (2) 'indicates that the disability or symptoms may be associated with the claimant's active military, naval, or air service;' and (3) 'does not contain sufficient medical evidence for the Secretary to make a decision on the claim.'" *Id.* at 1349-50 (quoting 5103A(d)(2)). [7]

## E. Application of Law To This Case

Section 5103A(a) requires that VA "assist a claimant in obtaining a medical opinion or examination whenever such an opinion is 'necessary to substantiate the claimant's claim,'" and "only

---

[7]Section 5103A(d) provides in full:

(1)In the case of a claim for disability compensation, the assistance provided by the Secretary under subsection (a) shall include providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim.

(2)The Secretary shall treat an examination or opinion as being necessary to make a decision on a claim for purposes of paragraph (1) if the evidence of record before the Secretary, taking into consideration all information and lay or medical evidence (including statements of the claimant) --

    (A) contains competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability; and

    (B) indicates that the disability or symptoms may be associated with the claimant's active military, naval, or air service; but

    (C) does not contain sufficient medical evidence for the Secretary to make a decision on the claim.

24

excuses [] VA from making reasonable efforts . . . when 'no reasonable possibility exists that such assistance would aid in substantiating the claim.'" *Wood*, 520 F.3d.at 1348 (quoting 38 U.S.C. § 5103A(a)).

Mr. Trafter sought VA disability benefits under section 1151, advancing two theories of VA negligence: (1) that VA medical personnel failed to timely diagnose and treat his breast cancer, which led to the development or aggravation of his mental disability; and (2) that VA misdiagnosed him with bipolar disorder, which, in turn, caused or aggravated his mental disability. R. at 8.

Here, the Board cited section 5103A(d) and summarily determined that (1) Mr. Trafter is not competent to opine as to whether the timeliness of his breast cancer diagnosis or misdiagnosis of his mental condition demonstrates negligence; and (2) no other competent evidence of record exists demonstrating fault on the part of VA. R. at 6, 15-16. The Board then considered the merits of Mr. Trafter's section 1151 claim without ever discussing whether a medical opinion was "necessary to substantiate" his claim or explaining why "no reasonable possibility exists that [a medical opinion] would aid in substantiating [his] claim." 38 U.S.C. § 5103A(a)(1, 2). Although "[t]he duty to assist is not boundless in its scope," without competent evidence of record or a medical opinion discussing the theories on which Mr. Trafter's section 1151 claim is based, it is unclear how the Board could reach the conclusion that Mr. Trafter's mental disability is not the result of VA negligence. R. at 4; *see Golz v. Shinseki*, 590 F.3d. 1317, 1320 (Fed. Cir. 2010) (holding that VA's "duty to assist is not boundless in scope"). The Board's treatment of this issue is conclusory, and a more thorough discussion is needed for Mr. Trafter to understand the Board's reasoning and for the Court to conduct a proper review. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (holding that the Board must provide an adequate statement of reasons or bases for its conclusions that permits the claimant to understand why the Board made the determination it did and to allow effective judicial review of that decision).

25