# United States Court of Appeals for the Federal Circuit

2007-7174

DELORIS G. WOOD,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellee.

Zachary M. Stolz, Chisholm Chisholm & Kilpatrick LLP of Washington, DC, argued for claimant-appellant. On the brief was Richard Paul Cohen, Cohen, Abate & Cohen, L.C., of Morgantown, West Virginia. Of counsel was Ronald L. Smith, Disabled American Veterans, of Washington, DC.

Brian T. Edmunds, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. On the brief were Jeanne E. Davidson, Director, Martin F. Hockey, Jr., Assistant Director, and Claudia Burke, Attorney. Of counsel on the brief were Michael J. Timinski, Deputy Assistant General Counsel, and Tracey P. Warren, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Donald L. Ivers

# United States Court of Appeals for the Federal Circuit

2007-7174

DELORIS G. WOOD,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 05-2164, Judge Donald L. Ivers.

_____

DECIDED:    March 28, 2008

_____

Before MICHEL, <u>Chief Judge</u>, DYK, <u>Circuit Judge</u>, and KENNELLY, <u>District Judge</u>.[*]

Opinion for the court filed by <u>Chief Judge</u> MICHEL.  <u>Circuit Judge</u> DYK dissents.

MICHEL, <u>Chief Judge</u>.

Deloris G. Wood appeals from the final decision of the Court of Appeals for Veterans Claims ("Veterans Court") sustaining the Department of Veterans Affairs ("VA") denial of her claim for dependency and indemnity compensation ("DIC").  <u>See</u> <u>Wood v. Nicholson</u>, No. 05-2164 (Vet. App. Oct. 4, 2006) ("<u>Wood II</u>").  Because the Veterans Court committed legal error by failing to apply 38 U.S.C. § 5103A(a) in

---

[*]    Honorable Matthew F. Kennelly, District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

reviewing the VA's denial of her request for assistance, and we cannot decide whether the error was harmless without exceeding our jurisdiction, we vacate and remand.

## I. BACKGROUND

Mrs. Wood's husband, Thomas W. Wood, served in the U.S. Army during World War II, leaving the service in March 1946. Shortly before his discharge, Mr. Wood slipped in the shower and incurred a severe head injury on December 11, 1945. He was treated at a base hospital, which kept him on bed rest before returning him to duty. Private and VA medical records, Mrs. Wood's testimony, their son's testimony, and his own personal documents indicate that Mr. Wood suffered from chronic severe headaches from shortly after his in-service head injury throughout his life. As a result, Mr. Wood took large quantities of numerous medications to deal with the headaches. The medical records provide evidence that doctors, including a VA physician, believed his headaches were the result of his original in-service head injury.

Mr. Wood also suffered from numerous other health problems, some related to his headaches and some unrelated. His headache medications, for example, caused gastrointestinal bleeding from ulcers on multiple occasions. In 1985, Mr. Wood developed hydrocephalus (water on the brain), which required the insertion of a ventriculo-peritoneal shunt to relieve pressure on his brain. This shunt had to be replaced multiple times due to infection and other reasons, and it remained in place for the rest of his life. He also developed hypertension. In June 1991, Mr. Wood sustained a second head injury, again falling in the shower; the injury caused a grand mal seizure, and he also experienced a serious brain hemorrhage (a subdural hematoma). He fell again in 1992, again suffering a serious brain hemorrhage (a basal brain bleed). Mr.

Wood was also diagnosed with lung cancer in 1980 and had surgery as a result. The cancer resurfaced in 1997 and was treated with radiation therapy.

Mr. Wood died on November 2, 1998. The primary cause of death according to the autopsy report was heart disease (myocardial ischemia). The detailed autopsy report of the examining physician, Dr. James W. Spindler, M.D., also listed eighteen "contributing factors," including "history of a remote history of fall with subsequent severe headaches, 1946." Appellant's App'x at 1235-36. The death certificate by the coroner,[1] however, only listed his cancer, feeding tube, and ventriculo-peritoneal shunt as "[o]ther significant conditions contributing to death but not resulting in [the primary cause of death]" in the limited space provided on the one-page form. Id. at 1233.

Mrs. Wood filed for DIC benefits in February 1999. Her claim was ultimately denied by the VA regional office ("RO") in February 2005. She appealed to the Board and requested that the VA assist her by obtaining a medical opinion to assess whether her husband's headaches and related conditions were material contributory causes of his death. The Board denied her request for assistance and held that the RO correctly determined that Mr. Wood's headaches were not a contributory cause of death within the meaning of 38 C.F.R. § 3.312(a), thus sustaining the RO's denial of benefits. In large part, the Board's decision was based on the fact that although the autopsy report

---

[1] The government confirmed at oral argument that unlike the pathologist who drafted the autopsy report, the coroner who filled out the death certificate form was not a medical doctor, which is common. This disparity in qualifications, along with the vastly greater detail generally provided in autopsy reports, may be why the VA, in enacting 38 C.F.R. § 3.312, specifically named autopsy reports as particularly probative of what conditions contributed to death. See 38 C.F.R. § 3.312(a) ("[Causes of death] will be determined by exercise of sound judgment, without recourse to speculation, after a careful analysis has been made of all the facts and circumstances surrounding the death of the veteran, including, particularly, autopsy reports.") (emphasis added).

listed Mr. Wood's history of headaches as a contributing factor of his death, the death certificate omitted that factor from its listing of just three contributory factors.

Mrs. Wood next appealed to the Veterans Court, which affirmed the Board's decision in a brief one-judge non-precedential opinion. The Veterans Court held that the Board had not erred by denying Mrs. Wood's request for assistance because she had not met all of the prerequisites under 38 U.S.C. § 5103A(d)(2) to require the VA to obtain a medical opinion. Additionally, the Veterans Court held that the Board was not clearly erroneous in finding that Mr. Wood's head conditions did not contribute "substantially and materially to his death" as required by 38 C.F.R. § 3.312(a). Wood II, slip op. at 3. Specifically, the Veterans Court held that, despite the autopsy report's listing of Mr. Wood's head injury and subsequent headaches as a contributing factor of his death, the Board correctly relied instead on the death certificate that omitted it. Id.

## II. DISCUSSION

### A.

The key threshold issue in this case is whether Mrs. Wood was entitled to assistance from the VA in obtaining a medical opinion to review and reconcile conflicting medical evidence in the record under the Veterans Claims Assistance Act ("VCAA"). The Veterans Court held that she was not so entitled because she did not meet all of the required elements of 38 U.S.C. § 5103A(d)(2), which sets forth conditions on the VA's duty to obtain medical opinions under § 5103A(d)(1). The government concedes, however, that § 5103A(d)(1) does not apply to DIC claims and that the Veterans Court thus erred as a matter of law by reviewing the Board's denial of her request for assistance solely under that provision of the VCAA. Rather, the Veterans Court should

have applied the general duty to assist provision of 38 U.S.C. § 5103A(a), which provides in relevant part:

> (a) Duty To Assist.
>     (1) The Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary.
>     (2) The Secretary is not required to provide assistance to a claimant under this section if no reasonable possibility exists that such assistance would aid in substantiating the claim.

Since DIC benefits are a "benefit under a law administered by the Secretary," this provision clearly applies to Mrs. Wood's request for assistance here.

We have recently held that § 5103A(a) "does not always require the Secretary to assist the claimant in obtaining a medical opinion or examination." DeLaRosa v. Peake, 515 F.3d 1319, 1322 (Fed. Cir. 2008). But § 5103A(a) does require the VA to assist a claimant in obtaining a medical opinion or examination whenever such an opinion is "necessary to substantiate the claimant's claim." 38 U.S.C. § 5103A(a)(1); DeLaRosa, 515 F.3d at 1322. In fact, the statute only excuses the VA from making reasonable efforts to provide such assistance, if requested, when "no reasonable possibility exists that such assistance would aid in substantiating the claim." 38 U.S.C. § 5103A(a)(2). Thus, the Veterans Court erred by not assessing whether the free medical opinion requested by Mrs. Wood was "necessary to substantiate [her] claim," or whether "no reasonable possibility exists" that the medical opinion requested by Mrs. Wood "would aid in substantiating [her] claim," under § 5103A(a).

## B.

Though under DeLaRosa, and as is conceded, the Veterans Court committed legal error, it is still necessary to examine whether its decision can be affirmed

nonetheless on the ground that the error was harmless. As we noted in Szemraj v. Principi, however, the limited scope of our review of Veterans Court decisions also limits our application of the harmless error principle. 357 F.3d 1370, 1374 (Fed. Cir. 2004). Generally, under 28 U.S.C. § 2111, we must disregard "errors or defects which do not affect the substantial rights of the parties." However, under 38 U.S.C. § 7292(a), we may only review "the validity of a decision of the [Veterans Court] on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [Veterans Court] in making the decision." Congress then went even further, providing that, absent a constitutional question, this court may not review "(A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2); see also Maggitt v. West, 202 F.3d 1370, 1374 (Fed. Cir. 2000).

In D'Amico v. West, we held that the Veterans Court had erred by failing to apply a statute, 38 U.S.C. § 5108, in its review of a Board decision. 209 F.3d 1322, 1327 (Fed. Cir. 2000). The government argued in that case that the Veterans Court decision should nonetheless be affirmed because the Board, unlike the Veterans Court, had applied the statute in its decision and concluded that the claimant had not met its requirements. Id. We declined to affirm on the basis of harmless error because we lacked jurisdiction to review the Board's factual findings, and so we remanded to the Veterans Court. Id. at 1327-28. In other words, we lacked jurisdiction to determine whether in fact the error was harmless because doing so in that case required fact-finding and/or application of law to fact. Since the Veterans Court had erred as a matter

of law, and we could not affirm on the basis of harmless error, we had no choice but to remand, which we did.

However, four years later in Szemraj, we held that the jurisdictional limitations of 38 U.S.C. § 7292 do not bar this court from affirming a Veterans Court decision on the basis of harmless error when application of the correct legal standard to undisputed facts establishes that the judgment of the Veterans Court was correct, despite the legal error(s) in its reasoning. 357 F.3d at 1375-76. We based our holding in large part on our decision in Bailey v. Principi, where we reviewed a Veterans Court decision rejecting equitable tolling but relying on a legal standard from a case later reversed by this court en banc. See 351 F.3d 1381, 1383-84 (Fed. Cir. 2003). We vacated the Veterans Court decision and set forth the correct legal standard, but we then proceeded to apply the standard to the facts to hold that the claimant should have been afforded equitable tolling. We explained that although we cannot review applications of law to fact, "when the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome of the equitable tolling claim, this court has treated the question of the availability of equitable tolling as a matter of law that we are authorized by statute to address." Id. at 1384 (citing Jaquay v. Principi, 304 F.3d 1276, 1289 (Fed. Cir. 2002) (en banc); Santana-Venegas v. Principi, 314 F.3d 1293, 1298 (Fed. Cir. 2002)) (emphasis added).

In DeLaRosa, we implicitly followed the Szemraj rule in a case with facts similar, though not identical, to those of the present case. There, too, the Veterans Court erred by analyzing a DIC claimant's request for a medical opinion under § 5103A(d) instead of § 5103A(a). DeLaRosa, 515 F.3d at 1321-22. We held, however, that the error was

harmless because, as the Board noted, the record contained no competent evidence whatsoever of the post-traumatic stress disorder ("PTSD") that the veteran's spouse alleged was service connected. Id. at 1322. The only medical evidence of PTSD in the record was one doctor's speculative opinion, which the Board excluded from its consideration.[2] Indisputably, the record lacked any other medical evidence of PTSD. We then conducted a harmless error analysis based on that indisputable lack of competent evidence, consistent with Szemraj, and held that the error was harmless in that case, affirming the Veterans Court on that ground.

C.

The dissent implies that DeLaRosa holds that, when the (inapplicable) requirements of subsection (d) are not met, misapplying § 5103A(d) rather than applying § 5103A(a) is per se harmless error because subsection (d) is more "favorable" to claimants as a matter of law. See Dissent at 2. We disagree and do not read DeLaRosa as making such an over-broad holding.

First, subsections (d) and (a) have dramatically different scope, as we recognized in DeLaRosa. 515 F.3d at 1321-22. While § 5103A(a) applies to any "benefit under a law administered by the Secretary" and thus encompasses DIC claims, § 5103A(d) only

---

[2]    The opinion was drafted six years after the veteran's death, without having ever examined the veteran during his life, by an internist and geriatrician (i.e., not a psychologist or other mental health professional). DeLaRosa, 515 F.3d at 1320. The Board refused to consider the evidence, deeming it speculative and without probative weight. Id. at 1321. We lack jurisdiction to review such evidentiary rulings of the Board, thus that evidence could not create a dispute of fact precluding harmless error review on appeal.

applies to "claim[s] for disability compensation,"[3] which does not include DIC claims. Id.; see also 38 U.S.C. § 5103A(a), (d).

Second, the two provisions apply wholly different and unrelated requirements. As already discussed, subsection (a) requires the VA to provide a claimant with a free medical opinion whenever such an opinion is (1) "necessary to substantiate [the] claim," unless (2) "no reasonable possibility exists that such assistance would aid in substantiating [the] claim." 38 U.S.C. § 5103A(a). By contrast, under subsection (d), the claimant must demonstrate that the record evidence (1) "contains competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability;" (2) "indicates that the disability or symptoms may be associated with the claimant's active military, naval, or air service;" and (3) "does not contain sufficient medical evidence for the Secretary to make a decision on the claim." Id. § 5103A(d)(2).

The brief and unexplained statement in DeLaRosa that § 5103A(d) is "even more restrictive" than § 5103A(a) cannot reasonably be read as a broad holding that failing to meet all of the requirements of subsection (d) automatically means the very different requirements of subsection (a) are not met, regardless of the facts. Rather, our opinion in DeLaRosa carefully and expressly tied its holding to the uncontroverted facts of that case. See DeLaRosa, 515 F.3d at 1322 ("[T]he Board determined that there was no medical evidence of PTSD during the veteran's lifetime."). And as explained earlier,

---

[3] The VA defines "disability compensation" as "a monthly payment made by the Department of Veterans Affairs to a veteran because of service-connected disability . . . if the veteran is disabled as the result of a personal injury or disease (including aggravation of a condition existing prior to service) while in active service if the injury or the disease was incurred or aggravated in line of duty. 38 C.F.R. § 3.4(a), (b)(1). Thus, as the government conceded, payments to a widow or widower of a veteran are not "disability compensation."

under our binding precedents in <u>D'Amico</u> and <u>Szemraj</u>, we could only affirm on the basis

of harmless error in <u>DeLaRosa</u> because the relevant facts were uncontroverted. Thus,

we now turn to the question of whether we must follow <u>D'Amico</u> in this case, or whether

it falls within the exception to <u>D'Amico</u> outlined in <u>Szemraj</u> and applied in <u>DeLaRosa</u>.[4]

D.

We conclude that we cannot affirm the Veterans Court here on the basis of

harmless error, thus following <u>D'Amico</u>. Although <u>DeLaRosa</u> has some facts similar to

those of the present case, a key difference here precludes us on jurisdictional grounds

from determining that the Veterans Court's error was harmless.

As noted earlier, our <u>DeLaRosa</u> decision was predicated on the indisputable lack

of any competent evidence indicating PTSD. Here, however, the evidence is split and

thus the medical facts are genuinely disputed. The crux of both the Board and Veterans

Court decisions was the weighing of conflicting pieces of competent medical evidence,

principally the autopsy report and the death certificate. As the Veterans Court

explained:

> Although the Board acknowledged that the autopsy report listed the
> veteran's remote history of a fall in service and associated headaches as
> one of 18 contributing factors to his death . . . the death certificate . . . did
> not list the veteran's in-service head injury as a significant condition
> contributing to death.
>
>           *                    *                    *
>
> As noted by the Board, the record in the instant case contained medical
> evidence of the cause of death and remote evidence of a history of head
> laceration in service with a history of associated headaches, but no
> medical evidence suggesting that the veteran's headaches or head
> laceration <u>materially</u> contributed to cause his death.

---

[4] The dissent suggests we construe <u>DeLaRosa</u> as violating <u>D'Amico</u>. <u>See</u> <u>Dissent</u> at 3. But we do not read <u>DeLaRosa</u> as contrary to <u>D'Amico</u>. Moreover, the dissent ignores our precedent in <u>Szemraj</u>. As discussed above, this court's analysis in <u>DeLaRosa</u> was entirely consistent with <u>D'Amico</u> as clarified by <u>Szemraj</u>.

<u>Wood II</u>, slip op. at 3-4 (emphasis in original). The Veterans Court thus clearly recognized that the autopsy report was competent medical evidence of a possible link between Mr. Wood's in-service head injury and his death. However, the Veterans Court accepted the Board's finding that the probative weight of the death certificate overpowered that of the autopsy report, holding that, as a result, neither the autopsy report nor any other medical evidence in the record was sufficient to prove <u>material</u> contribution, the standard required by the applicable VA regulation governing contributory causes of death. 38 C.F.R. § 3.312. The Board's reasoning was similar:

> The record does show that the veteran injured his head in service, and the autopsy report does list a remote history of a fall in 1946, with subsequent severe headaches, as a contributing factor [of his death]. . . . Yet the Certificate of Death does not list the veteran's in-service head injury as a significant condition contributing to death. There is no medical evidence indicating that the veteran's head injury in service, or his headaches after service, contributed <u>substantially and materially</u> to his death.

<u>In re Wood</u>, No. 00-09 674A, slip op. at 10-11 (Bd. Vet. App. Feb. 28, 2005) (emphasis added). Thus, far from an indisputable lack of any competent evidence as was the case in <u>DeLaRosa</u>, the record evidence here was itself conflicted.

Because the evidence here is split, we cannot conduct a harmless error analysis without exceeding the bounds of our jurisdiction, which precludes fact review. As we explained in <u>Szemraj</u>, this court can examine the harmless error question only where the relevant facts are undisputed because applying a dispositive legal standard to undisputed facts is essentially a matter of law, not fact. <u>Szemraj</u>, 357 F.3d at 1375-76 (citing <u>Bailey</u>, 351 F.3d at 1383-84). When the facts are undisputed, we are merely accepting the facts as found and as conceded to be correct by all parties. But when, as here, the facts are genuinely in dispute, assessing whether the evidence would support

the Veterans Court's judgment even under the correct legal standard would require factual analyses that are expressly beyond this court's jurisdiction.

More specifically, we cannot decide whether the record here would support the denial of the requested medical review even under § 5103A(a) without, for example, weighing the relative probative values of the autopsy report and the death certificate. In order to determine if Mrs. Wood's substantive rights were prejudiced by the Veterans Court's failure to apply the § 5103A(a) standard, we would have to determine whether the requested medical opinion was "necessary to substantiate" her claim and whether there was "no reasonable possibility that [the medical opinion] would aid in substantiating the claim." See 38 U.S.C. § 5103A(a). Thus, we would be required to determine whether the examining pathologist's detailed report of his autopsy findings—which stated that Mr. Wood's severe headaches contributed to his death—held sufficient probative value such that the requested medical review and opinion would be "necessary to substantiate" Mrs. Wood's claim despite the coroner's omission of headaches from the one-page death certificate form. Indeed, the record is rife with evidence that appears to add to the factual disputes in the case. For example, a report of a VA medical examination conducted in 1998, not long before Mr. Wood's death, also described his chronic severe headaches as well as the gastrointestinal bleeding, excessive amounts of necessary medications, and general degradation in health associated with them. Appellant's App'x at 1097. The report further indicated that Mr. Wood's headaches are "likely to be post-traumatic secondary to the [in-service] injury in 1945." Id. at 1098. This and other record evidence must all be assessed to determine whether the requested medical opinion is "necessary" to resolve the apparent factual

disputes and whether "no reasonable possibility exists" that such an opinion would aid in substantiating Mrs. Wood's claim. Such assessments are precisely the types of factual inquiries that are beyond this court's jurisdiction under 38 U.S.C. § 7292. Thus we must remand to the Veterans Court to conduct those assessments but under the correct legal standard.

## CONCLUSION

We hold that the Veterans Court erred as a matter of law by failing to apply 38 U.S.C. § 5103A(a), instead wrongly applying § 5103A(d), in reviewing the Board's denial of Mrs. Wood's request for a medical review. We further hold that we cannot affirm the Veterans Court's judgment on the basis of harmless error because doing so would require resolution of genuine factual disputes, which is beyond this court's jurisdiction. Therefore, we vacate the Veterans Court's decision and remand for the court to determine whether Mrs. Wood's request for a medical opinion was wrongly denied under § 5103A(a).

## VACATED and REMANDED

# United States Court of Appeals for the Federal Circuit

2007-7174

DELORIS G. WOOD,

Claimant-Appellant,

v.

JAMES B. PEAKE, M.D., Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 05-2164, Judge Donald L. Ivers.

DYK, Circuit Judge, dissenting.

I respectfully dissent. The appellant is the widow of a deceased veteran who seeks to recover dependency and indemnity compensation ("DIC") under 38 U.S.C. § 1310, which allows recovery when a "veteran dies . . . from a service-connected or compensable disability." 38 U.S.C. § 1310(a). She claims that her husband's death was caused by a service connected disability and that the Department of Veterans Affairs was required to assist her by providing a medical opinion as to the cause of death.

The majority holds that the Board of Veterans' Appeals ("Board") and the Court of Appeals for Veterans Claims ("Veterans Court") erred when they addressed the latter issue because they applied 38 U.S.C. § 5103A(d), (which in some circumstances requires a medical examination of a claimant), rather than section 5103A(a), (which requires the Secretary of Veterans Affairs to seek a medical opinion when "necessary to

substantiate the claimant's claim"). I agree. But the majority goes on to hold that this error was harmful error and to require a remand. On this point I disagree.

It seems to me that the majority's conclusion that the Veterans Court's error was harmful is not consistent with our recent decision in DeLaRosa v. Peake, 515 F.3d 319 (Fed. Cir. 2008), which involved an identical issue. Contrary to the majority, I read this court's opinion in DeLaRosa to have concluded that subsection (d) imposes a more favorable standard, and to have held that a remand was accordingly not required when the Board and the Veterans Court erroneously applied subsection (d) rather than (a) to determine whether to require a medical opinion. Id. at 1322. The DeLaRosa court's holding that this error was harmless because the proper standard, under (a), would have been less favorable to the claimant than the standard applied, under (d), is apparent from the opinion. The court stated:

> In light of the Board's finding that the even more restrictive § 5103A(d) did not require the Secretary to provide a medical opinion and our holding that § 5103A(a) does not always require the Secretary to obtain a medical opinion, we conclude that the Veterans Court's application of § 5103A(d) was harmless error.

Id. (citation omitted, emphasis added); see also id. at 1321-22 (concluding that subsection (a) does not always require the Department of Veterans Affairs to provide a medical opinion because such a construction would render (d) meaningless). This panel is bound by the court's holding in DeLaRosa.

The majority dismisses DeLaRosa as holding "that the error was harmless because, as the Board noted, the record contained no competent evidence whatsoever" as to service connection. Maj. Op. at 7-8. In other words, the majority attempts to distinguish DeLaRosa on the ground that there the facts were undisputed, whereas in

this case they are not. In fact, in <u>DeLaRosa</u>, as here, there was a conflict in the evidence as to causation, and the Board had held the evidence insufficient to establish causation because the evidence favorable to the claimant "was . . . without probative value." <u>DeLaRosa</u>, 515 F.3d at 1321. I cannot read <u>DeLaRosa</u> as holding that the correct standard was more favorable and then exceeding our jurisdiction by determining whether the same factual result would have been reached using the correct standard. Such an interpretation of <u>DeLaRosa</u> would bring it into conflict with <u>D'Amico v. West</u>, 209 F.3d 1322, 1327 (Fed. Cir. 2000) (holding that this court lacks jurisdiction to determine whether an error is harmless if that determination requires application of a legal standard to the facts of a particular case). In my view, <u>DeLaRosa</u> can be read only as holding that the correct standard of (a) is less favorable to the claimant than the standard of (d). So read, it is inconsistent not with <u>D'Amico</u>, but with the majority opinion here.

Finally, I note that there is another legal issue in this case not addressed by the majority. But this issue was not properly raised on appeal. Mrs. Wood asserted for the first time at oral argument a regulatory construction argument regarding 38 C.F.R. § 3.312(c)(1),[1] which establishes the standard for when a service connected disability will

---

[1]     The relevant text of the regulation provides:

Contributory cause of death is inherently one not related to the principal cause. In determining whether the service-connected disability contributed to death, it must be shown that it contributed substantially or materially; that it combined to cause death; that it aided or lent assistance to the production of death. It is not sufficient to show that it causally shared in producing death, but rather it must be shown that there was a causal connection.

38 C.F.R. § 3.312(c)(1).

be considered a contributory cause of death for purposes of determining entitlement to dependency and indemnity compensation ("DIC"). Mrs. Wood urges that the Veterans Court and the Board erred by stating that a disability must contribute substantially <u>and</u> materially to death, whereas the proper standard is whether it contributed "substantially <u>or</u> materially." She contends that the term "materially" has an independent meaning different from "substantially," that a disability may contribute "materially" even if it does not contribute "substantially," and that neither the Board nor the Veterans Court separately considered whether a service-related disability contributed "materially" to her husband's death under the proper definition of "materially."

Mrs. Wood has not demonstrated that "substantially" and "materially" have different meanings, either in the context of this regulation or more generally. Indeed, the meanings of the two terms appear to be largely the same.[2] However, I would decline to decide the proper construction of "substantially or materially" in regulation section 3.312(c)(1) in this case because there is no indication that this issue was raised before either the Board or the Veterans Court and because it was not raised in the briefs in this court.

Under the circumstances, I would affirm the decision of the Veterans Court.

---

[2]	Webster's defines "material," in relevant part, as "being of real importance or great consequence," listing "substantial" as a synonym, <u>Webster's Third New Int'l Dictionary</u> 1392 (2002), and defines "substantial" as "being of moment" or "being that specified to a large degree or in the main." <u>Id.</u> at 2280. Black's Law Dictionary defines "material" as either "[h]aving some logical connection with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making process; significant; essential[.]" <u>Black's Law Dictionary</u> 991 (7th ed. 1999)