Citation Nr: 1456941 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 11-12 667 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona



THE ISSUE

Entitlement to service connection for the cause of the Veteran's death.



REPRESENTATION

Appellant represented by: The American Legion



WITNESS AT HEARING ON APPEAL

The appellant

ATTORNEY FOR THE BOARD

M. Postek, Associate Counsel


INTRODUCTION

The Veteran served on active duty from November 1961 to March 1966. He died in November 2006, and the appellant is his surviving spouse.
 
This case comes before the Board of Veterans' Appeals (Board) on appeal from a July 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Paul, Minnesota. Jurisdiction over the case was subsequently transferred to the RO in Phoenix, Arizona.

In that decision, the RO denied service connection for the cause of the Veteran's death and found that there was no basis for accrued benefits, as the Veteran did not have a pending claim at the time of his death. In the September 2010 notice of disagreement, the appellant specifically disagreed with the decision as to denial of service connection for the cause of the Veteran's death. In December 2011, the RO granted the appellant's claim for death pension benefits. Thus, the Board finds that the above-stated issue is the only matter before the Board, and no further consideration of the other issues is necessary.

A hearing was held before the undersigned Veterans Law Judge at the RO in May 2012. A transcript of the hearing is of record. At that time, the appellant submitted additional evidence, along with a waiver of the RO's initial consideration. Thereafter, the Board requested an advisory medical opinion from the Veterans Health Administration (VHA) in October 2013. In March 2014, the appellant submitted a responsive statement and additional materials, along with a waiver of the RO's initial consideration. Her representative also submitted a written brief thereafter.

The Board remanded the case for further development in April 2014. That development was completed, and the case has since been returned to the Board for appellate review. The Board notes that the remand yielded no additional, pertinent evidence; the Veteran's Social Security Administration (SSA) records were no longer available. As such, the Board finds that return of the claims file to the VHA physician for an additional opinion is not necessary, and there is no prejudice to the appellant in proceeding with adjudication of the claim. See also Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the claimant are to be avoided).

A review of the Virtual VA and Veterans Benefits Management System (VBMS) electronic claims files reveals additional documents relevant to the present appeal, including VA treatment records in Virtual VA considered by the agency of original jurisdiction (AOJ), as well as an August 2014 VA Form 21-22 appointing the above-named representative and a December 2014 written appellate brief in VBMS.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2014). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The Veteran's death certificate shows that he died in November 2006, and the immediate cause of death was listed as chronic obstructive pulmonary disease (COPD). Pulmonary fibrosis, tobacco abuse, hypertension, insulin dependent diabetes, and alcoholic liver disease were listed as other significant conditions contributing to death but not resulting in the underlying cause.

2. At the time of the Veteran's death, service connection was not in effect for any disability.

3. The cause of the Veteran's death developed many years after service and was not the result of a disease or injury incurred in active service, to include asbestos exposure.


CONCLUSION OF LAW

The requirements for service connection for the cause of the Veteran's death have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 1310 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.312 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

Upon receipt of a substantially complete application for benefits, VA must notify the claimant of what information or evidence is needed in order to substantiate the claim and it must assist the claimant by making reasonable efforts to get the evidence needed. 38 U.S.C.A. §§ 5103(a), 5103A (West 2014); 38 C.F.R. § 3.159(b) (2014); see Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). The notice required must be provided to the claimant before the initial unfavorable decision on a claim for VA benefits, and it must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004).

In Dingess v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that, upon receipt of an application for a service-connection claim, 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating, or is necessary to substantiate, each of the five elements of the claim, including notice of what is required to establish service connection and that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded.

The Court has held that additional, detailed notice requirements apply in the context of a claim for dependency and indemnity compensation (DIC) benefits based on service connection for the cause of death. In particular, this notice must include: (1) a statement of the conditions, if any, for which a veteran was service-connected at the time of his or her death; (2) an explanation of the evidence and information required to substantiate a DIC claim based on a previously service-connected condition; and (3) an explanation of the evidence and information required to substantiate a DIC claim based on a condition not yet service-connected. Hupp v. Nicholson, 21 Vet. App. 342 (2007), rev'd on other grounds, Hupp v. Shinseki, 329 Fed. Appx. 277 (Fed. Cir. May 19, 2009) (unpublished).

In this case, the RO provided the Veteran with a notification letter in January 2010, prior to the initial decision on the claim. Therefore, the timing requirement of the notice as set forth in Pelegrini has been met and to decide the appeal would not be prejudicial to the claimant. Moreover, the requirements with respect to the content of the notice were met in this case. In the letter, the RO notified the appellant of the evidence necessary to substantiate the claim and of the division of responsibilities in obtaining such evidence. This letter satisfied the Hupp and Dingess notification requirements.

In addition, the duty to assist the appellant has also been satisfied in this case. The Veteran's service treatment records as well as all identified and available post-service medical records are in the claims file. The appellant has not identified any available, outstanding records that are relevant to the claim decided herein. In addition, the AOJ attempted to obtain the Veteran's SSA records in response to the Board's April 2014 remand; however, these records were no longer available. The record also includes written statements provided by the appellant and her representatives, as well as a transcript of the May 2012 hearing.

In addition, VA medical opinions were obtained in March 2010 and March 2011, and the Board requested the December 2013 VHA advisory opinion. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 311-12 (2007); see also Wood v. Peake, 520 F.3d 1345, 1347-48 (Fed. Cir. 2008) (38 U.S.C.A. § 5103A(a) requires VA to assist a claimant in obtaining a medical opinion whenever such an opinion is necessary to substantiate the claim, unless no reasonable possibility exists that such assistance would aid in substantiating the claim). The Board finds that the VA and VHA opinions, when taken together, are adequate to decide the case because they are predicated on a review of the claims file and consideration of the Veteran's pertinent medical history, as well as the appellant's statements. The adequate opinions sufficiently address the central medical issues in this case to allow the Board to make a fully informed determination and are supported by rationale. Barr, 21 Vet. App. at 311. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA opinion regarding the issue on appeal has been met. 38 C.F.R. § 3.159(c)(4).

The Board does observe that the March 2010 VA examiner did not have access to the claims file; however, she did review the Veteran's VA treatment records, which included his medical history and complaints. Indeed, the Court has held that the relevant focus is not on whether a clinician had access to the claims file, but instead on whether the clinician was "informed of the relevant facts" in rendering a medical opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

The appellant also testified at a hearing before the undersigned Veterans Law Judge in May 2012. The Veterans Law Judge clearly set forth the issue to be discussed, sought to identify pertinent evidence not currently associated with the claims folder, and elicited further information when appropriate. The hearing focused on the elements necessary to substantiate the claim, and the appellant, through her testimony and questioning by her representative, demonstrated her actual knowledge of the elements necessary to substantiate the claim. As such, the Board finds that VA complied with the duties set forth in 38 C.F.R. § 3.103(c)(2) and Bryant v. Shinseki, 23 Vet. App. 488, 492 (2010). There has been no allegation otherwise.

The Board concludes that the appellant was provided the opportunity to meaningfully participate in the adjudication of the claim and did in fact participate. Washington v. Nicolson, 21 Vet. App. 191 (2007). For these reasons, the Board concludes that VA has fulfilled the duty to assist the appellant in this case. Hence, there is no error or issue that precludes the Board from addressing the merits of this appeal.


Law and Analysis

DIC benefits are payable to the surviving spouse of a veteran if the veteran died from service-connected disability. 38 U.S.C.A. § 1310. The death of a veteran will be considered as having been due to a service-connected disability when the evidence establishes that such disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a). A service-connected disability will be considered as the principal (primary) cause of death when such disability, singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto. 38 C.F.R. § 3.312(b). A contributory cause of death must be shown to have contributed substantially or materially to death; combined to cause death; or aided or lent assistance to the production of death. 38 C.F.R. § 3.312(c)(1).

Service-connected diseases or injuries involving active processes affecting vital organs should receive careful consideration as a contributory cause of death from the viewpoint of whether there were resulting debilitating effects and general impairment of health to an extent that would render the person materially less capable of resisting the effects of other disease or injury primarily causing death. 38 C.F.R. § 3.312(c)(3).

There are primary causes of death which by their very nature are so overwhelming that eventual death can be anticipated irrespective of coexisting conditions, but, even in such cases, there is for consideration whether there may be a reasonable basis for holding that a service-connected condition was of such severity as to have a material influence in accelerating death. It would not generally be reasonable to hold that a service-connected condition accelerated death unless such condition affected a vital organ and was of itself of a progressive or debilitating nature. 38 C.F.R. § 3.312(c)(4).

In determining whether the disorder that resulted in the death of the veteran was the result of active service, the laws and regulations pertaining to service connection apply. 38 U.S.C.A. § 1310.

Service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. As hypertension, diabetes mellitus, and cirrhosis of the liver are considered to be chronic diseases for VA compensation purposes, if chronicity in service is not established, a showing of continuity of symptoms after discharge may support the claim. 38 C.F.R. §§ 3.303(b), 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

In addition, for veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including hypertension, diabetes mellitus, and cirrhosis of the liver are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

The Board notes that there are no statutes specifically dealing with asbestos and service connection for asbestos related diseases, and VA has not promulgated any specific regulations. However, VA has provided guidance for considering asbestos compensation claims. See VA Adjudication Procedures Manual Rewrite (M21-1MR), IV.ii.2.C.9; VAOPGCPREC 4-2000 (April 13, 2000).

VA has acknowledged a relationship exists between asbestos exposure and the development of certain diseases, which may occur 10 to 45 years after exposure. See M21-1MR.IV.ii.2.C.9.c-d. When considering VA compensation claims, rating boards have the responsibility to ascertain whether or not service records demonstrate evidence of asbestos exposure in service and of ensuring that development is accomplished to determine whether or not there was pre-service and/or post-service evidence of occupational or other asbestos exposure. A determination must then be made as to the relationship between asbestos exposure and the claimed diseases, keeping in mind the latency and exposure information noted above. It should be noted that the pertinent parts of the M21-1MR guidelines of service connection in asbestos-related cases are not substantive rules, and there is no presumption that a veteran was exposed to asbestos in-service. Dyment v. West, 13 Vet. App. 141, 145 (1999), aff'd, Dyment v. Principi, 287 F. 3d 1377 (Fed. Cir. 2002); VAOPGCPREC 4-2000.

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. VA shall consider all information and lay and medical evidence of record in a case and when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the weight of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that service connection is not warranted for the cause of the Veteran's death.

The appellant claims that the Veteran's death was related to his exposure to asbestos and other chemicals during his service as a machinist's mate. See, e.g., May 2012 Bd. Hrg. Tr. at 3-6, 10; December 2009 and March 2014 written statements; December 2014 written brief. The appellant has reported that she knew the Veteran for about thirty years at the time of his death, and she has recalled that he started experiencing COPD symptoms in the 1980s. See May 2012 Bd. Hrg. Tr. at 4-6; March 2014 written statement; see also September 1990 marriage certificate.

The Veteran's death certificate shows that he died in November 2006, and the immediate cause of death was listed as COPD. Pulmonary fibrosis, tobacco abuse, hypertension, insulin dependent diabetes, and alcoholic liver disease were listed as other significant conditions contributing to death but not resulting in the underlying cause. No autopsy was performed. 

At the time of his death, the Veteran was not service-connected for any disabilities.

The Veteran's service treatment records document complaints of a chronic cough with a notation of tobacco abuse, as well as a diagnosis of an upper respiratory infection (URI), but they do not show a diagnosis of COPD or pulmonary fibrosis. See, e.g., September 1963, November 1963, May 1965 and January 1966 service treatment records. In addition, his service treatment records show no complaints, treatment, or diagnosis of hypertension, diabetes, or liver disease. On the March 1966 separation examination, all relevant body systems were found to be normal, including the lungs and chest, abdomen and viscera, and endocrine and genitourinary systems.

The Veteran's service records show that his military occupational specialty (MOS) was machinist's mate with a related civilian occupation of evaporator repairman (chem.). The National Personnel Records Center confirmed that the Veteran had probable exposure to asbestos exposure as a result of this MOS.

The post-service treatment records show that the Veteran had a long history of treatment for oxygen-dependent COPD associated with his smoking. He started smoking prior to service in 1957 and continued until his death in 2006. See, e.g., January 1992 Kaiser private treatment record (assessment of COPD); May 1992 VA examination report (2-3 packs per day for 35 years; diagnosis of COPD); VA treatment records from June 9 and 10, 2003 VA treatment records (1 pack per day down from 3 packs per day for 45 years; assessment of oxygen dependent COPD, current smoker), June 2005 (assessment of COPD with 43 pack years), and November 2006 (continues to smoke 2 packs daily; COPD on chronic oxygen therapy).

VA treatment records dated in mid-2003 show a progression of interstitial lung disease both clinically and by CT since December 2002 of an unknown etiology with multiple occupational and social exposures. It was noted that the Veteran's occupational exposures included a chemical plant and asbestos exposure, and social exposures included birds at home, worrisome for bird fancier's disease. See, e.g., June 2003 VA treatment records. Due to the Veteran's clinical presentation, a lung biopsy was performed in July 2003. The resulting pathology report shows a diagnosis of hypersensitivity pneumonitis with fibrosis and other associated physical findings.

In August 2003, a VA physician reviewed the pathology report and provided an impression of chronic interstitial lung disease likely due to exposure, history of asbestos and other chemicals while in service, without further explanation.

Thereafter, VA treatment records show a continuing diagnosis of chronic interstitial lung disease/non-specific interstitial pneumonitis (NSIP)/hypersensitivity pneumonitis with associated pulmonary fibrosis. See, e.g., June 2005, August 2006, and November 2006 VA treatment records. An August 2006 CT chest scan also shows findings of diffuse interstitial changes with normal heart size and vascular pattern, no intercurrent infiltrate, and no evidence of pleural fluid. The impression was stable appearing chronic interstitial lung disease.

The Veteran was admitted to the hospital in August 2006 and given an assessment of pancreatitis, diabetes, alcoholism, and COPD/hypersensitivity pneumonitis - still smokes. A November 2006 VA treatment record several days before the Veteran's death shows the history of the recent hospitalization for pancreatitis due to alcoholism, as well as a problem list including NSIP per biopsy, diabetes mellitus, COPD on chronic oxygen therapy, tobacco use, and alcohol abuse, among other things.

A March 2010 VA examiner opined that no disorder listed on the Veteran's death certificate (as stated above) was caused by or a result of in-service asbestos exposure or asbestosis. In so finding, the examiner noted review of the electronic VA treatment records, including the lung biopsy confirming the diagnosis of hypersensitivity pneumonitis and the 2006 CT scan showing evidence of NSIP. She noted that the Veteran's pulmonary fibrosis was due to NSIP and that there was no evidence on the lung biopsy or CT scan of asbestos-related changes. Nor were there any pleural changes on the CT scan. Therefore, there was no evidence of asbestosis. The examiner further stated that the etiologies of NSIP with associated pulmonary fibrosis provided in the medical literature are not due to asbestos and indicated that there is no known association of asbestos exposure and tobacco use, hypertension, diabetes mellitus, or alcoholic liver disease.

A March 2011 VA examiner provided a similar opinion based on review of the claims file. In particular, it was determined that the Veteran's asbestos exposure did not substantially contribute to or hasten his death due to the disorders listed on the death certificate. In so finding, the examiner noted that asbestos exposure can contribute to lung disease in the form of restrictive lung disease; however, with the final diagnosis of hypersensitivity pneumonitis following the lung biopsy, the examiner noted that there were no reported asbestos particles found on tissue examination. The examiner further indicated that the etiologies of this disorder provided in the medical literature are not due to asbestos. The examiner also indicated that asbestos exposure is not known to cause or aggravate hypertension, diabetes, or alcoholic liver disease.

A May 2012 private physician indicated that the Veteran's medical records were reviewed, noted that he had a history of exposure to asbestos and other chemicals while in service, and stated that his pulmonary fibrosis/chronic interstitial lung disease was likely due to exposure. In so finding, the physician indicated that the risk of idiopathic pulmonary fibrosis, a lung disease that makes it difficult to breathe, is greater in current and former smokers, as well as people who have breathed in "lots of toxic chemicals or tiny pieces of materials such as asbestos."

A December 2013 VHA physician (pulmonologist) determined that it was at least as likely as not that the interstitial lung changes noted on the Veteran's chest x-ray and CAT scan could have been caused by his history of asbestos exposure while in the service. In so finding, he noted that the interstitial changes as reported could be caused by asbestos exposure, based on the time frame in which the lung changes appeared and because asbestosis is by definition pulmonary interstitial fibrosis developing in response to inhalation of asbestos fibers. He indicated that some investigators have challenged the requirement for finding asbestos bodies in histologic sections, noting that a lung biopsy failing to show asbestos fibers does not rule out asbestos exposure.

Nevertheless, the VHA physician then determined that it was not likely that the Veteran's asbestos exposure caused his hypersensitivity pneumonitis or contributed substantially or materially to his death. In so finding, he explained that hypersensitivity pneumonitis is a form of lung injury due to ongoing and recurring exposure to organic material including, but not limited to, agricultural dusts, bioaerosols, microorganisms, and certain reactive chemical species to which the lung gets sensitized and gradually develops scar tissue as a result of the repetitive injury; the Veteran's lung biopsy was interpreted to reflect such a diagnosis. Earlier in the opinion, the physician stated that the noted progression of interstitial lung disease in mid-2003 was indicative of a subacute problem. He stated that asbestos is not reported in the literature to be a cause of hypersensitivity pneumonitis, and this fact, combined with the biopsy result, made it extremely unlikely that the progressing change noted on the CAT scan between December 2002 and mid-2003 was a result of asbestos exposure. The main reason for the development of hypersensitivity pneumonitis is ongoing exposure, which in the case of the Veteran was not applicable since the changes on the CAT scan were recognized 36 years after service. The examiner concluded that, while it was true that asbestos-related changes do occur 20 to 30 years after the initial exposure, the lung biopsy was suggestive of a different disease process, i.e. hypersensitivity pneumonitis and not asbestosis.

On review, the Board finds that COPD, chronic interstitial lung disease, NSIP/hypersensitivity pneumonitis, and pulmonary fibrosis did not manifest in service or for many years thereafter. While the Veteran's service treatment records show respiratory complaints and diagnoses as discussed above, these records do not document or otherwise suggest that the Veteran had a respiratory disorder at the time of separation from service. The earliest post-service evidence shows a diagnosis of COPD in the early 1990s, with findings of chronic interstitial lung disease, NSIP/hypersensitivity pneumonitis, and pulmonary fibrosis thereafter. The Veteran did not contend otherwise during his lifetime, and the appellant has indicated that she noticed the Veteran's first respiratory symptoms in the 1980s, which is over ten years after his service. These considerations weigh against a finding of onset during service or within close proximity thereto.

In addition to the lack of evidence showing that the above respiratory disorders manifested during service or within close proximity thereto, the weight of the evidence of record does not link these respiratory disorders to the Veteran's military service.

Initially, the record raises a question as to the nature of the Veteran's pulmonary fibrosis. The appellant has alleged that the scarring of the Veteran's lungs was the result of his in-service asbestos exposure, which contributed to his respiratory difficulties leading up to his death. The Board finds the consistent opinions of the March 2010 VA examiner, March 2011 VA examiner, and the December 2013 VHA physician, taken together, to be the most probative opinions on this matter. These opinions associate the Veteran's pulmonary fibrosis with his post-service NSIP/hypersensitivity pneumonitis and not asbestosis. The Board affords substantial probative weight to these consistent opinions, taken together, as they are based on a review of the claims file, to include the appellant's contentions and the medical evidence, and an accurate characterization of the evidence of record, as well as supporting rationale. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning). To the extent that the VA examiners did not clearly explain why the lack of a finding of asbestos on either the biopsy or CT scan was clinically significant, the VHA physician addressed this matter and acknowledged that a lung biopsy failing to show asbestos fibers does not rule out asbestos exposure. Nevertheless, he ultimately determined that the findings in this case were suggestive of hypersensitivity pneumonitis, a lung injury due to ongoing and recurring exposure to organic material, and not asbestos. The Board notes that, to the extent that the appellant alleges that the Veteran did not have exposure to certain organic materials associated with hypersensitivity pneumonitis (see, e.g., March 2014 written statement), the record reflects that the Veteran did have such exposure. See, e.g., VA treatment records from June 2003 (birds at home); August 2006 (wife works full-time as a feed store manager; Veteran reported leisure history of tending to his "menagerie (goats, chickens, horses, etc.)"); March 2011 written submission (including appellant's 2010 tax return documents with assets including hay barn dating back to 2003). Thus, it cannot be said that these opinions were based on an inaccurate or incomplete factual premise.

The August 2003 VA physician and the May 2012 private physician provided opinions indicating a link between the Veteran's in-service asbestos exposure and his interstitial lung disease and pulmonary fibrosis. In giving these opinions, the physicians did not explain their conclusions in light of the results of the pathology report and/or CT scan report, which do not appear to show asbestos particles or pleural changes, or the significance of the lack of these findings. Again, the VHA physician did determine that a lung biopsy failing to show asbestos fibers does not rule out asbestos exposure. Nevertheless, the physicians did not provide complete rationales, as they did not address all of the relevant findings in the post-service VA treatment records, including the diagnosis of hypersensitivity pneumonitis and the reported history of the Veteran's post-service exposures. Thus, the Board affords limited probative value to these opinions on the question of the nature of the pulmonary fibrosis.

Based on the foregoing, the Board finds that the most probative medical evidence shows that the Veteran's pulmonary fibrosis was due to chronic interstitial lung disease, NSIP/hypersensitivity pneumonitis, which developed many years after service and is not otherwise related to service.

In addition, the medical evidence does not link the Veteran's COPD to service. The VA treatment records show that the Veteran's COPD was associated with his lengthy history of smoking, as discussed above, and the remainder of the medical evidence does not suggest a direct link between the Veteran's COPD and service. The most probative medical evidence shows that the pulmonary fibrosis was associated with another disease process not related to service. Indeed, the March 2011 VA examiner indicated that asbestos exposure could contribute to lung disease in the form of restrictive lung disease; however, in this case, the final diagnosis was hypersensitivity pneumonitis. The May 2012 private physician indicated that the Veteran's COPD had a contributing factor of pulmonary fibrosis likely due to in-service exposure, but he did not provide an opinion that COPD was otherwise directly related to service.

In regard to hypertension, diabetes, and alcoholic liver disease, the Board finds that these disorders did not manifest in service or for many years thereafter. The Veteran's service treatment records do not suggest that the Veteran had these disorders during service, and his relevant body systems were normal at the time of separation. As such, there is actually affirmative evidence that the Veteran did not have the disorders at the time of separation from service. Therefore, chronicity as to hypertension, diabetes mellitus, and cirrhosis of the liver are not established in service. In addition, the record contains no indication that these disorders manifested to a compensable degree within one year of the Veteran's military service. The earliest post-service evidence of these disorders is many years after service; the Veteran did not contend otherwise during his lifetime, and the appellant has not contended otherwise. In fact, the Veteran filed his original pension claim in 1992 for emphysema, numbness in the feet, and his back, with treatment beginning in 1991. In December 2005, he filed a compensation claim, including a claim for an "undiagnosed" disability as a result of in-service asbestos exposure, as well as hearing loss and tinnitus.

In addition to the lack of evidence showing that hypertension, diabetes, and alcoholic liver disease manifested during service or within close proximity thereto, the weight of the evidence of record does not link these disorders to the Veteran's military service.

Again, the March 2010 and March 2011 VA examiners indicated that there is no known association (causation or aggravation) of asbestos exposure and hypertension, diabetes mellitus, or alcoholic liver disease. Indeed, the appellant does not contend that these disorders were directly related to the Veteran's service, as she instead believes that his death was a result of pulmonary disorders due to in-service exposures. Therefore, the Board concludes that the Veteran did not have hypertension, diabetes, or alcoholic liver disease that manifested during service or that was otherwise related to service.

In regard to the Veteran's documented history of tobacco and alcohol use, to the extent that any of the disorders listed on the death certificate were due to these factors, for claims filed after June 9, 1998, a disability or death will not be considered service-connected on the basis that it resulted from injury or disease attributable to the veteran's use of tobacco products during service. Tobacco products are defined as cigars, cigarettes, smokeless tobacco, pipe tobacco, and roll-your-own tobacco. 38 U.S.C.A. § 1103; 38 C.F.R. § 3.300(a). Thus, there is simply no legal basis to grant service connection for the cause of the Veteran's death due a disorder, including COPD, as secondary to tobacco use in service. 
In addition, direct service connection may be granted only when a disability or cause of death was incurred or aggravated in line of duty, and not the result of the veteran's own willful misconduct or, for claims filed after October 31, 1990, the result of his or her abuse of alcohol or drugs. 38 C.F.R. § 3.301(a); 38 C.F.R. § 3.1(m), (n). Although service connection may be granted for alcoholism where it is shown to be secondary to a service-connected disorder, service connection may not be granted for primary alcoholism or an alcohol-related disorder. 38 C.F.R. § 3.310(a); Allen v. Principi, 237 F.3d 1368, 1370 (Fed. Cir. 2001). The record does not reflect, nor does the appellant contend, that the Veteran's alcohol use was secondary to a disorder related to his service. 

The Board has also considered the contentions presented by the appellant and her representatives in support of the claim, to include the claimed relationship between the Veteran's respiratory disorders and service, as well as her multiple theories of causation. The appellant is certainly competent to report as to her recollection of the Veteran's observable symptoms and their history. Layno v. Brown, 6 Vet. App. 465 (1994); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The Board notes that the appellant has indicated that she knows that the Veteran was exposed to chemicals during service based on the related civilian occupation listed for his MOS and because she worked in a refinery. See, e.g., April 2011 report of general information; Bd. Hrg. Tr. at 12. However, even assuming the appellant's competence to report the Veteran's in-service events such as chemical exposure, the ultimate etiology questions in this case are related to an internal medical process which extends beyond an immediately observable cause-and-effect relationship that is of the type that the courts have found to be beyond the competence of lay witnesses. See Jandreau, 492 F.3d at 1377, n.4 ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"); Colantonio v. Shinseki, 606 F.3d 1378, 1382 (Fed. Cir.2010) (recognizing that in some cases lay testimony "falls short" in proving an issue that requires expert medical knowledge). To the extent that these lay statements are reflective of any contemporaneous medical opinion on these questions, the Board notes that they are afforded no more weight than that of the opinions themselves, as discussed above. Nevertheless, to the extent that the appellant and her representative are competent to opine on this matter, the Board finds that the specific, reasoned opinions of the medical providers are of greater probative weight than the more general lay assertions in this regard. The medical providers have training, knowledge, and expertise on which they relied to form their opinions, and they provided rationale for them.

The Board has reviewed the internet medical articles submitted by the appellant describing the nature of asbestosis, interstitial lung disease, and hypersensitivity pneumonitis and acknowledges their potential relevance to this case. See Sacks v. West, 11 Vet. App. 314, 317 (1998) ("This is not to say that medical article and treatise evidence are irrelevant or unimportant; they can provide important support when combined with an opinion of a medical professional."). Nevertheless, the general nature and etiology of these respiratory disorders is not at issue here. Rather, the central medical issues relate to the nature and manifestations of the Veteran's respiratory disorders, based on the specific facts in this case. In addition, the most probative medical evidence shows that the Veteran's current respiratory disorders were not related to asbestos exposure, as discussed above. As such, the Board finds that the submitted medical literature is of little probative value in this case.

Finally, the Board acknowledges the Veteran's submission of previously issued Board decisions and notes that prior Board decisions are considered binding only with regard to the specific case decided. The Board acknowledges that prior decisions in other appeals may be considered in a case to the extent that they reasonably relate to the case, but each case presented to the Board will be decided on the basis of the individual facts of the case in light of applicable procedure and substantive law. See 38 C.F.R. § 20.1303. In any event, to the extent that these Board decisions reasonably relate to this case, the Board finds that the most probative evidence in this case, as discussed in detail above, is against the claim.

While the Board is sympathetic to the appellant's claim, the weight of the evidence is against the claim. As such, the benefit-of-the-doubt rule does not apply, and the claim is denied. Gilbert, 1 Vet. App. 49, 53.


ORDER

Entitlement to service connection for the cause of the Veteran's death is denied.



____________________________________________
J.W. ZISSIMOS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs